John Houston Scott, SBN 72578
SCOTT LAW FIRM
2767 Dyer Avenue
Sebastopol, CA 95472-9043
Telephone: (415) 377-3054
E-mail: john@scottlawfirm.net

Carleton L. Briggs, SBN 117361
LAW OFFICES OF CARLETON L. BRIGGS
740 Fourth Street, Suite 202
Santa Rosa, California 95404-4421
Telephone: (707) 523 2251, Cell: (707) 280-6323
Facsimile: (707) 523 2253
E-mail: clbriggs@sonic.net

Attorneys for Plaintiff GEORGE BARICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BARICH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF COTATI, DAMIEN O'BID, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  3:26-cv-4944<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff George Barich, by and through his undersigned attorneys, hereby brings this action for damages under 42 U.S.C. § 1983 against Defendants the City of Cotati and Damien O'Bid to redress violations of Plaintiff's Constitutional rights, as follows:

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

## JURISDICTION AND VENUE

1.    This action arises under 42 U.S.C. Sections 1983 and 1988. Jurisdiction is conferred by virtue of 42 U.S.C. Sections 1331 and 1343.

2.    The conduct alleged herein occurred in Sonoma County, State of California. Venue of this action lies in the United States District Court for the Northern District of California by virtue of 28 U.S.C. Section 1391(b).

## DIVISIONAL ASSIGNMENT

3.    Pursuant to Civil Local Rule 3-2(c) and (d), assignment to the San Francisco / Oakland Division is proper because a substantial part of the events or omissions occurred in Sonoma County.

## PARTIES

4.    Plaintiff George Barich is a longtime resident of the City of Cotati and the County of Sonoma.

5.    Defendant City of Cotati is, and at all times alleged herein was, a public entity and municipal corporation located in the County of Sonoma, State of California, and organized under the laws of the State of California.

6.    Defendant Damien O'Bid has been acting as the City Manager for the City of Cotati since 2014. The City Manager is the Chief Executive of the municipal corporation and provides for implementation of policy directions of the City Council, maintenance of complete and accurate records of Council proceedings, and maintenance of official City files. The goal of the City Manager's Office includes supervising and working cooperatively with City staff to ensure that the City Council's

- 2 -
COMPLAINT

policies are carried out and recommending and managing programs and projects which will revitalize the economy of the City. Damien O'Bid is sued in both his individual and supervisory capacities.

7.   At all times herein mentioned City Manager Damien O'Bid was authorized by the Cotati City Council to supervise the prosecution of George Barich. In that capacity he acted in concert and colluded and conspired with others including, but not limited to, Code Enforcement Official Robert Smith, Administrative Hearing Officer Gary Weiner and presumably the City Attorney for the City of Cotati. In pursuing the prosecution of George Barich, Cotati City officials, employees and agents acted under color of state law and within the course and scope of their agency and employment.

8.   Plaintiff does not presently know the true names and capacities of defendants Does 1-10, inclusive, and therefore sues them by these fictitious names. Plaintiff may amend this Complaint to add their true names and capacities when they have been ascertained. Any reference in this Complaint to the City of Cotati, Damien O'Bid and/or the terms "defendant" or "defendants" also refers to Defendant Does 1 through 10.

### NON-PARTIES OF INTEREST

9.   Plaintiff has not named Gary Weiner, SBN 112174, as a defendant at this time because Mr. Weiner can assert quasi-judicial immunity for his acts and omissions as the Administrative Hearing Officer ("AHO") in this matter.  However, Plaintiff reserves the right to amend his Complaint to add Gary Weiner as a defendant should Plaintiff become aware of new information that would undermine or exceed the scope of quasi-judicial immunity.

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

10.    Plaintiff has not named Robert Smith, SBN 95940, as a defendant at this time because Mr. Smith can assert prosecutorial immunity for his acts and omissions as prosecutor in this matter. However, Plaintiff reserves the right to amend his complaint to add Robert Smith as a defendant should Plaintiff become aware of new information that would undermine or exceed the scope of prosecutorial immunity.

### STATEMENT OF FACTS

11.    This case involves politics of retribution in violation of the First Amendment and related corruption of the City of Cotati's administrative hearing process, including extortion and bribery, in violation of the Fourteenth Amendment.

12.    In 1994 Plaintiff George Barich purchased a single-family home in the City of Cotati. The home had been built as part of a subdivision in 1981. It included 22 single family and single-story tract houses of similar design with similar driveways. The subdivision was zoned RR (Rural Residential).

13.    Since 1997 George Barich has been employed in the business of designing, installing and repairing video security systems. In 2000 Mr. Barich formed his own business, Video Pro-tection. As a licensed contractor with a home-based business license in the City of Cotati for over 25 years, Barich specializes in the sale and installation of custom video security systems for commercial, retail, industrial, medical and governmental agencies in Northern California.

14.    Since 1994, and continuing to the present, George Barich has used his property to park a Ford van, a cargo trailer with tools, and a utility trailer that are used primarily

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

- 4 -
COMPLAINT

for business purposes. Mr. Barich also owns and periodically drives a 2014 Ford Flex, a 1971 Mustang convertible, a 1988 Cadillac, and a 2004 Corvette (replacing a 1992 Corvette), two jet skis on a trailer, Ford motorhome, and small travel trailer. In addition, since the 1990s Mr. Barich has purchased a few used vehicles and refurbished them to sell for a profit.

15.    George Barich frequently attended City Council meetings over the past 25 plus years. In November 2008 he was elected to the City Council and recalled in late 2009. Mr. Barich has been called both a "gadfly" and a "watchdog" by the local press. He is outspoken and at times controversial. Because of his public statements during City Council meetings and two prior lawsuits against the City of Cotati he is treated with disfavor and disdain by current members of the City Council and City Manager Damien O'Bid.

16.    In early 2021 Mr. Barich and Laurie Alderman brought a lawsuit in federal court related to three separate incidents that occurred at public City Council meetings held in January and March 2019. Barich and Alderman v. City of Cotati, No. 3:21-cv-0034-EMC. They alleged Constitutional claims related to two January meetings, during which the City Council prevented Ms. Alderman from reading a statement from Mr. Barich regarding the need for aid to the homeless during the winter months into the record. In addition, the complaint included an ADA claim related to a March 2019 meeting during which the City of Cotati failed to provide Mr. Barich with a functioning hearing-assist device and refused to change the meeting's time or location so that Mr. Barich could have access to such a device. This case was settled in February 2023 with

- 5 -
COMPLAINT

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

a payment by the City of Cotati of $80,000. The settlement became front page news in the Santa Rosa Press Democrat. (*See* Exhibit A, attached.)

17.    This is the *second* settlement Mr. Barich obtained from the City of Cotati. In 2015, he sued the City of Cotati and its longtime Police Chief Michael Parish for alleged civil rights violations. Barich v. City of Cotati, No. 3:15-cv-00350-VC. That suit stemmed from an incident at a 2014 City Council meeting at which Chief Parish threatened to arrest Barich for videotaping the proceedings. The federal court agreed with Mr. Barich that he had a right to record public officials in the performance of their official duties under the First Amendment. The City of Cotati paid Mr. Barich $50,000 in damages to settle the case in its early stages.

18.    In 2018 the City of Cotati entered into a contract with Robert Smith, a licensed attorney, to become its primary Code Enforcement Official. The contract was renewed from 2019 to the present. Smith was hired and paid to develop a comprehensive code enforcement program for the City, consisting of ordinances or other municipal code amendments, fines and/or fee recommendations, procedures, template letters and notices as needed for effective enforcement of the City's codes. In addition, he was responsible to receive, investigate and respond to registered complaints, establishing deadlines for compliance, monitoring compliance efforts, levying fines or penalties as necessary, and leading complaints through any necessary hearing processes.

19.    Sometime in the fall of 2020, Robert Smith was contacted by George Barich requesting that Code Enforcement remove what he referred to as a "squatter" from his property. Barich was concerned that she was using one of his tarp-enclosed car

canopies in his backyard as a paint booth and his small travel trailer to dry her painted cabinets without a business license.

20.    At Barich's request Robert Smith inspected the rear yard of the property. It appeared to Smith that there were several code violations. Barich requested that the City of Cotati verify compliance. Community Development Director Housh and Robert Smith visited the property and ordered that the tenant and paint-shed be removed. Two large cargo containers were observed on the property. Robert Smith determined that the two cargo containers would have to be permitted or removed from the property.

21.    Mr. Barich did not timely obtain a permit nor remove the containers from his property. Robert Smith was forced to file a Notice of Violation on April 6, 2021. The containers were removed. George Barich was not fined or otherwise penalized for any reason related to the Notice of April 6, 2021. He was notified by Mr. Smith on June 28, 2021, that his property was "**now in compliance with the City of Cotati municipal code**." (*See* Exhibit B, attached.) Robert Smith recognized that the uses and structures on the Barich property, with the exception of two containers, were "grandfathered in" as legal nonconforming uses going back to 1994.

22.    On June 5, 2023, within five months of the high-profile settlement referenced above, two of Mr. Barich's neighbors, Robert Hamby and Casey Ramon, requested that Cotati Code Enforcement investigate potential violations of the Cotati Municipal Code on Mr. Barich's property, including human habitation of two RVs. Robert Smith was primarily responsible for inspecting the property for potential code violations.

- 7 -
COMPLAINT

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

23.    A Notice of Violation and Order to Abate dated August 10, 2023 (*see* Exhibit C, attached), referenced by Robert Smith as the "Commencement Letter", went out by mail to Mr. Barich. Unlike other Notices of Violation issued by the City of Cotati Code Enforcement to Barich and others, this Notice was not preceded by the preliminary notice required by Code Enforcement's written case-flow procedures specified by Robert Smith.

24.    The Notice dated August 10, 2023, and signed by Robert Smith stated that numerous alleged violations had been deemed a public nuisance and ordered Mr. Barich to appear at a hearing on October 5, 2023, for a determination of facts and threatened a special assessment lien on his property. The Notice gave Mr. Barich 30 days to remedy the alleged violations. As to the two RVs about which Mr. Hamby and Mr. Ramon complained, the one belonging to Ms. Dow was removed on August 1, 2023, before the Notice dated August 10 was sent. The other RV belonged to Edward Walker, a friend of Mr. Barich who was renting a room in the Barich residence. That RV was removed when Mr. Walker's tenancy ended on October 1, 2023, before the noticed hearing date of October 5, 2023, and before the Amended Notice dated October 6, 2023, setting a new hearing date of November 13, 2023.

25.    On information and belief, the City of Cotati initially designated Laura Rosenthal, an experienced AHO for the City of Cotati, to act as the hearing officer for the Barich administrative hearing originally noticed for October 5, 2023. Beginning in 2018 and continuing to the present Robert Smith maintained a list of two or three local attorneys who would act as Administrative Hearing Officer for the City of Cotati. These attorneys

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

were paid approximately $250 per hour for their services and were limited in the scope of their authority and jurisdiction as dictated by a Cotati municipal ordinance. Since 2018 there were well over one hundred hearings. The hearings typically lasted no longer than one day. On occasion two or three hearings would be conducted in one day. The fee paid to AHOs per hearing was typically less than $5,000.

26.    In this case Robert Smith's goal, in the furtherance of a conspiracy with Damien O'Bid, was to extort money from George Barich in retaliation for Barich's exercise of his First Amendment rights. In order to achieve that common goal on or about October 2023 Robert Smith cancelled the hearing to be conducted by an experienced AHO on the list Smith maintained.  He solicited and selected a local attorney, Gary Weiner, with no experience in these matters. Robert Smith reached an undisclosed oral contract with Gary Weiner to act as the AHO in the Barich matter. Robert Smith, as the prosecutor and primary witness for the City of Cotati, offered a bribe to Gary Weiner by agreeing to pay Weiner personally for his services as the designated AHO, with the expectation that Weiner would rule in favor of the City. Gary Weiner accepted the offer while acknowledging that he had no experience regarding zoning and related code enforcement matters. (*See* Exhibit D, attached: 11/9/23 email – "**I have no idea what the subject matter even is.**") Their oral agreement provided that Gary Weiner be paid $395 per hour for his time (later increased to $525 per hour) with no limit on his jurisdiction, the scope and duration of his services, or the hours of work to be performed. The oral agreement also did not preclude future employment of Gary

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

Weiner by Robert Smith as an AHO for City of Cotati or for other cities to which Mr. Smith was providing code enforcement services.

27. Thereafter, Gary Weiner submitted written invoices to Robert Smith. Robert Smith paid Gary Weiner from his personal account and sought reimbursement from the City of Cotati.

28. Setting aside the bribe, the oral agreement was in clear violation of Plaintiff's procedural due process rights under both state and federal law. *Haas v. County of San Bernardino*, 27 Cal.4th 1017, 1024-1037 (2002) (the practice, *inter alia*, of appointing hearing officers on an ad hoc basis, with compensation tied to the duration or volume of work, compromises the impartiality required by Due Process under both the Federal and State Constitutions). Gary Weiner and Robert Smith did not disclose their oral agreement to George Barich or to his counsel. In addition, the Plaintiff has information and believes that there were numerous ex parte communications between Robert Smith and Gary Weiner during the Barich hearing which also were not disclosed.

29. The hearing before AHO Weiner commenced on November 13, 2023. Mr. Barich was represented by counsel. The prosecutor and primary witness for the City of Cotati was Robert Smith. George Barich did not have the ability to subpoena witnesses or documents.

30. The express purpose of the hearing was to determine whether Barich had violated provisions of the municipal code. The real purpose was to commit extortion in retaliation for First Amendment activities. George Barich appeared with his counsel. The hearing lasted approximately five hours and was devoted to the alleged violations.

COMPLAINT

AHO Weiner ordered legal briefings on some issues. The presentation of evidence was nearly concluded with supplemental briefing to be specified by the AHO.

31.   On January 25, 2024, AHO Weiner issued a Case Management Order that provided, in part:

> "As for Respondent's claim that the enforcement of city codes is retaliation for his past claims against the City, Respondent has the burden to provide evidence that the actions were intentional and motivated by retaliation for political acts and/or for otherwise protected speech. An interlocutory evidentiary hearing will be held for the sole purpose of the taking of testimony on the subject of selective prosecution on a date to be determined at the forthcoming case management conference. City will have an opportunity to submit rebuttal. Both parties will submit initial lists of witnesses to be called and an offer or proof as to each. Timelines for same will be set at the forthcoming case management conference."

32.   Under the guise of providing "robust" due process to George Barich, AHO Weiner created the opportunity for himself and others to benefit financially at the expense of Barich by expanding the scope of the hearing and related administrative costs beyond the provisions of the Cotati Municipal Code. Section 1.30.080, subsection C, provides as follows:

> "The hearing officer shall only consider evidence that is relevant to whether the violation occurred and/or whether a public nuisance exists, whether the recipient of the notice and order is the responsible party, and the administrative costs incurred by the city."

33.   This was done with the knowledge and consent of Robert Smith and Damien O'Bid. On information and belief, this is the only time after the City of Cotati hired Robert Smith where the AHO was given the option of ignoring the jurisdictional limits of the Municipal Code. Subject matter jurisdiction cannot be conferred where it does not exist. AHO Weiner used this as an opportunity to pad his wallet at Mr. Barich's

- 11 -
COMPLAINT

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

expense while achieving the Defendants' goal of extorting money from George Barich in an effort to chill his speech.

34. On March 11, 2024, the hearing commenced regarding the issue of selective prosecution. Robert Smith testified on behalf of the City of Cotati. Mr. Barich commenced his testimony, however, the hearing was adjourned before Mr. Barich could complete his testimony.

35. AHO Weiner ordered a site inspection which he attended on March 26, 2024. Barich was ordered by AHO Weiner not to record or video the inspection. Two more hearings on the motion to dismiss for selective prosecution were held May 29, 2024, and June 19, 2024.

36. AHO Weiner scheduled a number of CMCs that were postponed due to illness and vacations. The next hearing was scheduled to be held on November 23, 2024. Counsel for George Barich, Carleton Briggs, was in a serious car accident on November 7, 2024. He was hospitalized for 7 weeks. AHO Weiner was informed of the accident by Attorney Briggs on November 11, 2024. On November 13, 2024, he ordered substitution of counsel or withdrawal as counsel. A CMC conference was held by Zoom with Attorney Briggs in his hospital room on December 2, 2024.

37. On February 3, 2025, AHO Weiner denied the motion to dismiss for selective prosecution finding that Barich had not met the "clear and convincing" standard of proof after Barich cited well-established state law that the proper burden was a preponderance of the evidence. *People v. Gray*, 254 Cal.App.2d 256 (1967).

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

COMPLAINT

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

38.    On April 22, 2025, counsel for Barich, Carleton Briggs, sent an e-mail to AHO Weiner, copied to Robert Smith, stating, in part:

"The last invoice statement from Your Honor, produced by the City of Cotati in response to a PRA request, shows that $40,030.10 has been paid to Your Honor to date in George Barich's case. The City's vendor history reports over this time frame show four payments totaling approximately $12,000 to prosecuting attorney Robert Smith for reimbursement for Your Honor's services. See attached. Am I to understand that Mr. Smith, rather than the City of Cotati, has been paying Your Honor directly? Please confirm if this is the case. I have asked Mr. Smith to confirm if this is the case, but I have received no response.

"If in fact Your Honor has been paid thousands of dollars by Mr. Smith, such was never disclosed to Respondent Barich and has just been brought to our attention.  I believe that, at the very least, this creates the appearance of impropriety. I therefore would respectfully ask your Honor to recuse himself from this matter."

39.    On April 23, 2025, at 8:40 a.m. Robert Smith replied, stating in part:

"Cotati uses at any time two or three experienced attorneys to act as AHOs. Hearing dates are sent out and the hearing officers select dates. It is basically first come first serve. I think you will find that all jurisdictions with their code enforcement do essentially the same thing.

"In Mr. Barich's case, sensitive to his deep-seated belief in conspiracy theories and lack of trust in authority, the City went to extraordinary lengths to avoid any appearance of conflict and chose a hearing officer that had no prior connection to Cotati or my office.
 ….

"In this case, the hearing officer selected and designated by the City Manager was Mr. Weiner. The obligation and agreement is between the City of Cotati and the hearing officer.
 ….

"Lastly, as to the timing of your request, you most certainly knew from the very beginning that Mr. Weiner was being compensated by the City. I find it curious that only now, as we are near concluding the process and the issue of selective prosecution have been settled, that you suddenly have "concerns".  It would be manifestly unfair and detrimental to the City if the hearing officer were to recuse himself at this point."

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

40.   On April 23, 2025, at 11:00 a.m. Gary Weiner responded as follows:

"The email correspondence from Briggs is a mixture of inquiry, introduction of evidence that is without proper foundation, and a 'motion for recusal.' The inferences drawn from the records attached are incorrect and there is no conflict nor, except perhaps in the mind of counsel, even a vaguely reasonably apprehended appearance of impropriety. Finally, counsel well knows the extent to which this officer has gone to provide Mr. Barich with robust due process.

"In any event, the request or motion is denied."

(*See* e-mail chain attached as Exhibit E; Order on Renewed Motion to Recuse attached as Exhibit F.)

41.   On June 2, 2025, Barich submitted a motion to disqualify Robert Smith for violating Rule 3.7 of the Rules of Professional Conduct in that he did not obtain the necessary waiver from the City of Cotati to appear as both an attorney and a witness. (*See* Exhibit G, attached.) On June 4, 2025, he was replaced by attorney Steven Ngo. Mr. Ngo is a member of Redwood Public Law, the same firm of which City Attorney John Bakker is a partner.

42.   In response Mr. Ngo submitted a declaration by Robert Smith dated June 25, 2025, stating, "In this hearing, I have not been acting as an attorney for the City of Cotati."

43.   On July 28, 2025, AHO Weiner tentatively granted Mr. Barich's request to reopen the motion for selective prosecution based on newly discovered evidence. On August 8, 2025, AHO Weiner sent his "order" allowing the renewed motion to go forward and scheduled two days for the hearing – August 14 and 15, 2025.  AHO Weiner then

ordered the parties to submit closing briefs "due 10 business days after the August 15th by 5:00 p.m."

44.    Two days of hearing occurred on August 14 and 15, 2025.

45.    On August 18, 2025, AHO Weiner sent an e-mail to Mr. Ngo, counsel for the City of Cotati, that states: "Gentlemen: I had previously been asked to send my invoices to Mr. Smith. There are several outstanding and balances are due. To whom should I address them now?" *See* Exhibit H, attached.

46.    The next day, August 19, 2025, AHO Weiner received a payment of $11,156.25.

47.    Thereafter, beginning on August 29, 2025, numerous hearings occurred through October 30, 2025, purportedly devoted to the issue of selective enforcement. This resulted in AHO Weiner billing more than $30,000 for his additional services through November 2025 while Mr. Ngo billed more than $50,000 in administrative costs.

48.    On December 7, 2025, George Barich submitted his closing brief on the issue of selective prosecution.

49.    On December 8, 2025, a written contract between the City of Cotati/City Manager and AHO Weiner was executed. (*See* Exhibit I, attached.) This contract was not disclosed to George Barich. Had the contract been disclosed George Barich would have promptly requested that Gary Weiner recuse himself and, if necessary, brought a formal motion for recusal. The contract required that AHO Weiner obtain liability insurance. It also provided that he complies with the City ordinances including Section 1.30.080.

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

- 15 -
COMPLAINT

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

50.    On January 9, 2026, the motion to dismiss for selective prosecution was denied by AHO Weiner. On January 15, 2026, AHO Weiner was paid $25,392.25 by the City of Cotati. (*See* Exhibit J, attached.)

51.    On February 13, 2026, Carleton Briggs, having just become aware of the December 8, 2025, contract, sent an e-mail to AHO Weiner, stating in part,

> "Please find attached the contract you recently entered into with the City of Cotati regarding this matter. I did not become aware of this contract until yesterday, although I believe you and the City of Cotati had a duty to disclose it at the time it was made.

> "Based on this newly acquired evidence, my client will be submitting a motion to recuse you as the AHO in this matter. I hope to be able to submit the motion next week and leave it to your discretion to designate a briefing schedule for an Opposition and Reply. The motion will be based primarily on *Haas v. County of San Bernardino*, 27 Cal.4th 1017 (2002), which stands for the proposition that 'the personal selection of the hearing officer by the county's attorney—who also prosecuted the matter—was sufficient to cause a reasonable person to doubt the adjudicator's impartiality.' The Court also held that the county's unilateral selection, retention, and payment of a temporary administrative hearing officers on an ad hoc basis violated due process. We believe the same reasoning applies whether Mr. Smith hired you in his capacity as an attorney or as a witness for the City. I also request that you provide me with a copy of the original contract you entered into with Mr. Smith that is referred to in the attached contract."

(*See* Exhibit K, attached.)

52.    On February 19, 2026, George Barich filed a formal motion to recuse AHO Weiner. That motion was denied on March 11, 2026. AHO Weiner then acknowledged that he had originally entered an oral contract with Robert Smith.

53.    AHO Weiner had the obligation to recuse himself *sua sponte* based on *Haas v. County of San Barnardino* and Canon 3(E) of the California Code of Judicial Ethics. Specifically, Canon 3(E)(1) requires AHOs to disqualify themselves in any proceeding

where their impartiality might reasonably be questioned. In addition to Canon 3(E), AHOs are bound by state law (e.g., California Code of Civil Procedure Section 170.1) to step aside if a conflict of interest exists. In addition, Code of Judicial Ethics, Canon 3E(2)(a), requires disclosure on the record of "information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification."

54. On April 7, 2026, AHO Weiner served a tentative final order. The parties submitted objections to the tentative order. On April 16, 2026, there were closing arguments. On April 23, 2026, AHO Weiner submitted a final order requiring George Barich to abate three of the violations and pay to the City of Cotati $240,167.98 for fines incurred through November 2023 and half of the administrative costs incurred by the City including the fees paid to Gary Weiner by Robert Smith and the City through May 9, 2026.

55. On April 22, 2026, AHO Weiner was paid $11,740.20 by the City of Cotati. On April 24, 2026, AHO Weiner was paid an additional $5,853.75 by the City of Cotati.

56. On May 9, 2026, and again on May 22, 2026, AHO Weiner amended the order to include additional administrative costs resulting in a new total of $266,884.34 of fines and administrative costs to be paid by George Barich to the City of Cotati.

## DAMAGES

57. As a result of the acts and omissions alleged herein, Plaintiff has suffered, and continues to suffer, non-economic general damages including fear, anxiety, humiliation, depression and emotional distress in an amount to be determined according to proof.

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

58.    As a further result of the acts and omissions alleged herein, Plaintiff has suffered economic damages according to proof, including but not limited to attorney's fees and costs related to defending the prosecution by the City of Cotati, loss of earnings and earning capacity both past and future.

59.    As a further result of the acts and omissions herein, Plaintiff was ordered to pay $266,884.34 to the City of Cotati.

60.    The acts and omissions of Defendant Damien O'Bid and others were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the Plaintiff. Plaintiff therefore prays for an award of punitive and exemplary damages in the amount of $6,000,000.

61.    Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees and costs should he prevail in this matter.

### FIRST CAUSE OF ACTION
### (42 U.S.C. Section 1983 – Retaliation in Violation of First Amendment)
### (Against Defendant Damien O'Bid)

62.    Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

63.    Plaintiff was engaged in protected activities under the First Amendment, i,e, freedom of expression and the right to petition the government.

64.    Defendant Damien O'Bid set in motion a series of acts by subordinate Robert Smith, or knowingly refused to terminate a series of acts by Robert Smith, that Damien

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

O'Bid knew or reasonably should have known would cause Robert Smith to deprive Plaintiff George Barich of his rights under the First Amendment.

65.    Plaintiff's protected activities were a substantial or motivating factor in Damien O'Bid's conduct.  As a result of his conduct, Plaintiff suffered damages as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (42 U.S.C. Section 1983 – Retaliation in Violation of First Amendment)
### (Against City of Cotati)

65.    Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

67.    The acts and omissions of Damien O'Bid deprived Plaintiff George Barich of his First Amendment rights.

68.    Damian O'Bid had final policymaking and/or final decision-making authority from the City of Cotati concerning the acts and omissions alleged herein. When engaged in these acts and omissions, Damien O'Bid was acting as a final policy maker and/or final decision maker for the City of Cotati.

69.    The acts and omissions of Defendant Damien O'Bid caused the deprivation of Plaintiff George Barich's rights. Damien O'Bid's acts and omissions were so closely related to the deprivation of Barich's rights as to be the moving force that caused the damages alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

- 19 -

COMPLAINT

**THIRD CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Violation of Due Process Under the Fourteenth Amendment)**
**(Against Defendant Damien O'Bid)**

70.    Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

71.    In his capacity as the Code Enforcement Official and prosecutor for the City of Cotati, Robert Smith solicited and selected Gary Weiner as the administrative hearing officer to adjudicate the proceedings against George Barich. The oral agreement between Smith and Weiner violated Barich's due process rights. *Haas v. County of San Bernardino*, 27 Cal.4th 1017 (2002).

72.    The hearing officer Gary Weiner was unilaterally selected, retained and paid by Robert Smith. Robert Smith participated in the hearing as a prosecutor and witness. There was a complete absence of any restriction on the selection and the payment of Gary Weiner or the duration of his services to insure a reasonable degree of impartiality.

73.    Damien O'Bid knew that his subordinate Robert Smith was engaging in these acts and knew or reasonably should have known that subordinate Smith's conduct would deprive Plaintiff Barich of these rights. Mr. O'Bid acted with deliberate indifference to the substantial risk of serious harm to Barich, including fines and penalties of $266,884.34, yet Damien O'Bid failed to act to prevent Robert Smith from engaging in such conduct.

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

74.    Damien O'Bid's deliberate indifference was a substantial factor in causing damages to Plaintiff George Barich.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Violation of Due Process Under the Fourteenth Amendment)**

75.    Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

76.    The acts and omissions of Damien O'Bid regarding the selection, scope of services, and compensation of Gary Weiner deprived Plaintiff George Barich of his rights under the Fourteenth Amendment to due process.

77.    Damian O'Bid had final policy-making and final decision-making authority from Defendant City of Cotati when engaged in these acts and omissions. When engaged in these acts and failures to act, Damien O'Bid was acting as a final policy maker and final decision maker for the City of Cotati.

78.    The acts and failures to act of Damien O'Bid caused the deprivation of George Barich's rights. His conduct was so closely related to the deprivation of Barich's rights as to be the moving force that caused the damages alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

///

///

- 21 -
COMPLAINT

**FIFTH CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Violation of Due Process Under the Fourteenth Amendment)**
**(Against Defendant Damien O'Bid)**

79.    Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

80.    The Ninth Circuit identifies the elements of public bribery as requiring (1) two parties – one who paid, offered, or conferred the bribe, and one who received, solicited, or agreed to accept it; (2) something to be given by the bribe-giver – either a private favor, a pecuniary benefit, or any benefit; and (3) something to be given by the bribe-taker – either official action, the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, or a violation of a known legal duty as public servant. *United States v. Shen Zhen New World I, LLC,* 115 F.4th 1167, 1176-1177 (9th Cir. 2022).

81.    In violation of law, Robert Smith offered a bribe and Gary Weiner agreed to accept it. Their oral agreement provided that Gary Weiner would be paid $395 per hour, later increased to $525 per hour, without any limitation on the scope or duration of his services and without requiring him to comply with applicable City of Cotati ordinances. It further provided that Gary Weiner would rule in favor of the City of Cotati. The agreement also provided that Gary Weiner send invoices to Robert Smith and that Smith would personally pay the invoices and seek reimbursement from the City of Cotati. The oral agreement was not disclosed to Plaintiff George Barich.

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

82.   Defendant Damien O'Bid knew that his subordinate Robert Smith was engaging in these acts and knew or reasonably should have known that Robert Smith's conduct would deprive Plaintiff Barich of his due process rights, yet Damien O'Bid failed to act to prevent Robert Smith from engaging in such conduct.

83.   The extortion and bribery scheme alleged herein violates Due Process and shocks the conscience. It was a substantial factor in causing damages to Plaintiff George Barich.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Violation of Due Process Under the Fourteenth Amendment)**
**(Against Defendant City of Cotati)**

84.   Plaintiff George Barich hereby realleges and incorporates by reference all prior paragraphs of this Complaint.

85.   Defendant Damien O'Bid was a final policymaker and final decisionmaker for Defendant City of Cotati.

86.   Defendant Damien O'Bid, on behalf of Defendant City of Cotati, ratified Robert Smith's acts and omissions in violation of both procedural and substantive due process. In that regard Defendant Damien O'Bid knew of and specifically made a deliberate choice to approve of and ratify Robert Smith's due process violations, including extortion and bribery, when Defendant O'Bid presented and executed the

"Administrative Transfer of Contract Services Agreement" to Gary Weiner on December 8, 2025. (*See* Exhibit I, attached.)

87.   The agreement provides:

> "This memorandum serves to formally document the administrative transition of the professional services arrangement previously established between Robert Smith and Gary Weiner. Going forward, and consistent with the requirements of the City of Cotati's Professional Services Agreement (PSA), all services will be contracted directly between the City of Cotati ("City") and Gary Weiner ("Consultant"). This action aligns the engagement with City procurement standards, legal requirements, and administrative processes, and ensures continuity of services without interruption."

88.   In entering into this agreement, Damien O'Bid acted with the knowledge and consent of the Cotati City Council. Plaintiff also has information and believes that this agreement was ratified by Damien O'Bid on the advice of the City Attorney for the City of Cotati.

89.   As a result of the procedural and substantive due process violations, including extortion and bribery, ratified by City Manager Damien O'Bid, Plaintiff George Barich incurred damages as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**PRAYER**

Plaintiff prays for relief as follows:

1.  For general and compensatory damages according to proof

2.  For non-economic damages according to proof;

3.  For economic damages according to proof;

COMPLAINT

4. For an award of exemplary and punitive damages against Damien O'Bid and other individual defendants in the amount of $6,000,000;

5. For an award of attorneys' fees and costs as permitted by law; and

6. For such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.

Respectfully submitted,

Dated: May 26, 2026                                    Scott Law Firm

                                                       /s/ John Houston Scott
                                                       JOHN HOUSTON SCOTT

                                                       Law Offices of Carleton L. Briggs

                                                       /s/ Carleton L. Briggs
                                                       CARLETON L. BRIGGS

                                                       Attorneys for Plaintiff
                                                       GEOGE BARICH

SCOTT LAW FIRM
2767 Dyer Avenue, Sebastopol, California 95472-9043
Telephone: (415) 377-3054

COMPLAINT

| | **Exhibits to Complaint** |
|---|---|
| **EXHIBIT** | |
| A | February 28, 2023, The Santa Rosa Press Democrat Newspaper Article regarding "Council Critics Receive $80,000" |
| B | June 28, 2021, letter from Robert Smith, City of Cotati Code Enforcement Official, to George Barich |
| C | August 10, 2023, Administrative Notice of Violation and Order to Abate from Robert Smith to George Barich |
| D | November 9-10, 2023, e-mails between Braden Eggert/Code Officer and Gary Weiner |
| E | April 22-23, 2025, e-mails between Carleton Briggs, Robert Smith and Gary Weiner in reference to request for recusal of AHO Weiner |
| F | August 22, 2025, Order on Renewed Motion to Recuse issued by Gary Weiner, Hearing Officer |
| G | June 2, 2025, e-mail from Carleton Briggs to Gary Weiner and Robert Smith regarding violation of Rule 3.7 |
| H | August 18, 2025, e-mail from Gary Weiner to Steve Ngo and Carleton Briggs |
| I | December 8, 2025, Memorandum of Services Agreement regarding Administrative Transfer of Contract Services between the City of Cotati and Gary Weiner |
| J | January 26. 2026, invoice from Gary Weiner to the City of Cotati with reference to payment of $25,392.25 received by Gary Weiner on 1/15/26. |
| K | February 13, 2026, e-mail from Carleton Briggs to Gary Weiner re motion to recuse |

# EXHIBIT A

CANNABIS HEARING » Board of Supervisors will consider changes to marijuana tax. A3

49ERS' TO-DO LIST » Niners hunting for backup QB, other needs at NFL Combine. B9

SHAKING THINGS UP » First Shake Shack in county will open in Santa Rosa. A12

# The Press Democrat

WINNER OF THE 2016 PULITZER PRIZE

TUESDAY, FEBRUARY 28, 2023 • SANTA ROSA, CALIFORNIA • PRESSDEMOCRAT.COM

# Council critics receive $80,000

**COTATI** » *City pays out settlement after 2 people said civil rights violated*

By AUSTIN MURPHY
THE PRESS DEMOCRAT

Laurie Alderman was in fine spirits the morning of Feb. 23.

"The check cleared yesterday," reported Alderman, a paralegal who lives in Cotati.

She was referring to the $80,000 settlement the city of Cotati paid to her and George Barich, like Alderman a Cotati resident and fixture at city council meetings.

Both take pride in their roles as gadflies — holding elected officials to account, closely monitoring the actions and decisions of the council.

Over the last 24 years, as Barich noted in a "declaration" for this case in U.S. District Court, he has often engaged in

George Barich

"spirited debate" with members, "offering praise as well as healthy constructive criticism."

Familiarity, in this case, bred a certain level of animosity, followed by litigation.

Alderman and Barich sued the city and then-mayor John Dell'Osso in federal court in 2021, alleging that their civil rights had been violated. By not allowing Alderman to read a statement from Barich during the public comment period at two city council meetings in 2019, the city and mayor had violated Barich's First Amendment right to free speech, the plaintiffs claimed.

Their suit also contended that the city violated the Americans with Disabilities Act by failing to provide Barich with sufficient accommodations for his progressive hearing loss and tinnitus at March 2019 meeting.

After failing to have the case dismissed outright, lawyers representing the city of Cotati filed a motion for summary judgment in August, 2022. That is, they claimed that all necessary factual issues had been settled, or were so one-sided they need not be tried.

U.S. District Court Judge Edward Chen disagreed, rejecting that motion on Dec. 22, 2022. A trial was scheduled for February.

TURN TO CRITICS » PAGE A5



## FIRST SNOW, THEN THIS BEAUTY IN SEBASTOPOL

PHOTOS BY JOHN BURGESS THE PRESS DEMOCRAT

**PETALUMA**

# School's response to attack spurs ire

*Casa Grande parents cite poor communication after classroom assault*

Case 4:26-cv-04944-KAW    Document 1    Filed 05/26/26    Page 29 of 81

## NEWS

# Cotati settles free speech lawsuit with longtime gadflies for $80,000



By **AUSTIN MURPHY** | austin.murphy@pressdemocrat.com | The Press Democrat
PUBLISHED: February 27, 2023 at 5:00 PM PST

Laurie Alderman was in fine spirits the morning of Feb. 23.

"The check cleared yesterday," reported Alderman, a paralegal who lives in Cotati.

She was referring to the $80,000 settlement the city of Cotati paid to her and George Barich, like Alderman a Cotati resident and fixture at city council meetings.

Both take pride in their roles as gadflies — holding elected officials to account, closely monitoring the actions and decisions of the council.

Over the last 24 years, as Barich noted in a "declaration" for this case in U.S. District Court, he has often engaged in "spirited debate" with members, "offering praise as well as healthy constructive criticism."

Familiarity, in this case, bred a certain level of animosity, followed by litigation.

Alderman and Barich sued the city and then-mayor John Dell'Osso in federal court in 2021, alleging that their civil rights had been violated. By not allowing Alderman to read a statement from Barich during the public comment period at two city council meetings in 2019, the city and mayor had violated Barich's First Amendment right to free speech, the plaintiffs claimed.

Their suit also contended that the city violated the Americans with Disabilities Act by failing to provide Barich with sufficient accommodations for his progressive hearing loss and tinnitus at March 2019 meeting.

After failing to have the case dismissed outright, lawyers representing the city of Cotati filed a motion for summary judgment in August, 2022. That is, they claimed that all necessary factual issues had been settled, or were so one-sided they need not be tried.

U.S. District Court Judge Edward Chen disagreed, rejecting that motion on Dec. 22, 2022. A trial was scheduled for February.

Three weeks before the trial was to begin, the city settled with Alderman and Barich.

While he would not speak on the record, Cotati city manager Damien O'Bid released a statement explaining that "the City's insurance company made a business decision to settle the lawsuit now to avoid spending close to the same amount of money to defend this case in court."

While Alderman, Barich and their attorneys will receive $80,000, the statement adds, "the plaintiffs will provide a release of claims that they may have prior to Jan. 5, 2023. There is no finding of any City liability and it eliminates the possibility of any new lawsuits being brought by the same plaintiffs for any old unknown grievances."

## 2nd settlement for Barich

This is the second five-figure settlement Barich has won from the city of Cotati.

In 2015, he sued the city and its longtime police chief, Michael Parish, for alleged civil rights violations.

That suit stemmed from an incident at a 2014 City Council meeting.

At the end of that meeting, Barich criticized the city's planning commissioner and called him a liar. Barich was then summoned outside by Parish.

The chief asked Barich if he was making a secret recording of him and told him he would arrest him if he was, court papers said. Also, Parish warned Barich he would arrest him if he ever called anyone a liar at a City Council meeting again, according to court documents.

Barich routinely records city business. For the last several years, he has used a body-worn camera while attending council meetings.

Barich wasn't taping Parish during their 2014 encounter, but maintained his right to do so. California law requires the consent of all parties involved when recording private conversations, but makes an exception in the case of police officers, who can be recorded in public places.

When his requests for an apology from the chief and council members were met with silence, Barich decided to sue.

At an October, 2015 hearing, U.S. District Judge Vince Chhabria signaled his support for Barich's claims, saying "the briefs the city of Cotati and the police chief have submitted ... show a real lack of respect for the First Amendment in a way I find pretty disturbing."

The judge said Parish needed to "go back to school on the First Amendment."

The city paid Barich $50,000 in damages, but admitted no wrongdoing.

## Polarizing figure

Barich became a lightning rod for criticism shortly after his election to the city council in November 2008. He was rebuked for using city letterhead without permission to write to then-President Barack Obama, denouncing the federal stimulus package.

Barich also drew widespread condemnation for posting a picture of himself in blackface on his personal website. He was recalled in a special election on Nov. 17, 2009.

He was out of town for the council's Jan. 8, 2019 meeting. Wishing to be heard, however, he asked Alderman to read a written statement into the record, arguing for assistance to the city's homeless population.

That statement, said Barich in an email to the Press Democrat, "clearly reminded the council that for many years our homeless, including homeless [Sonoma State University] students, are nearly freezing to death during the coldest nights of the year in Cotati. This simply broke my heart."

In a follow-up email, Barich railed against Parish and the City Council for "whitewashing the homeless problem in Cotati for the sake of economic development" and "tourism."

During the public comment period at that 2019 meeting, according to court records, then-mayor John Dell'Osso "indicated he would not allow Ms. Alderman to read Mr. Barich's statement aloud," although he would admit it into the into the written record.

At the next meeting, two weeks later, Alderman — whom Barich had appointed as his attorney-in-fact, to "present his testimony at the meeting" — once again sought to read his statement.

Dell'Osso asked the advice of city attorney Robin Donoghue, who confidently stated that city council rules "do not allow for speakers to present a power of attorney and comment for someone else." The existing rules "do not permit this."

Alderman voiced her disagreement, noting that this was "a matter of civil rights versus city council rules." Donoghue was "incorrect," she added.

Reviewing that exchange in federal court, Judge Chen sided with Alderman.

If such a rule existed, Alderman and Barich also pointed out, it had only ever been applied to them. They provided the court with 13 examples of meetings where persons spoke on behalf of others during the open comment period.

Donoghue is no longer the city's attorney. Reached by phone, she said she had no comment. Dell'Osso did not reply to emailed requests for comment.

## Failed accommodations

Barich's ADA claim stemmed from a March 2019 special council meeting, held in the community room of the Cotati police station. While the city provided him with two hearing-assist devices, neither worked.

Dell'Osso suggested Barich raise his hand to interrupt the meeting whenever he had trouble hearing the discussion, according to court documents. Barich found that unreasonable, and left the meeting.

The city's lawyers argued that the ADA claim should also be tossed, according to court documents, "because no evidence suggested that the City or Mayor Dell'Osso acted with deliberate indifference ... and because Mr. Barich rejected Mayor Dell'Osso's proposed reasonable accommodation."

"This court disagrees," Chen wrote, in rejecting that request for summary judgment, thus clearing the way for a trial.

Instead, the parties settled.

One reason for that decision, said Alderman in a statement, was to "prevent more taxpayer dollars being used to litigate the case through trial."

The two-year court battle cost taxpayers approximately $200,000, according to that statement.

O'Bid would not comment for the record on that $200,000 estimate, referring to the separate statement released by the city.

"The City disagrees with much of the information in the statement provided by plaintiffs in their press release," it said. "The City Council and city staff continually strive to go beyond the legal requirements for open and transparent meetings and accommodations for all residents."

Alderman estimated that it would've cost "another $50,000 or $60,000 in legal fees" to go to trial, where they might have won $200,000, depending on the jury, she believes.

But Alderman is caring for her ailing, 85-year-old mother. Barich was coming off a bout of pneumonia.

They settled, she said, "because we wanted it to end."

You can reach Staff Writer Austin Murphy at austin.murphy@pressdemocrat.com or on Twitter @ausmurph88.

## The Press Democrat ✕

# Breaking News Alerts

Skip the rumor mill. Get the facts.

Enter your email          **SIGN UP!**

**2023 > February > 27**

# EXHIBIT B

# City of Cotati Code Enforcement

201 W. Sierra Ave.
Cotati, California
94931



## NOTICE OF COMPLIANCE

June 28, 2021

George Barich
176 W. Cotati Oaks Ct.
Cotati, CA 94931

Case No. 004-06-21

**Location of Violation:**

Property Address: 176 W. Cotati Oaks Ct.
AP#: 144-161-017

Dear Mr. Barich:

The City has determined that the property above is now in compliance with the City of Cotati municipal code.

Thank you for your willingness and effort to resolve this matter.

If you have any questions please feel free to contact me.

_____    DATE

Robert A. Smith
Code Enforcement Official
City of Cotati
(707) 665-3636
rsmith@cotaticity.org

✝ ✝ ✝

Ref #: 176 W. Cotati Oaks Ct.

EXHIBIT C

# City of Cotati

Sonoma County, California



## ADMINSTRATIVE NOTICE OF VIOLATION AND ORDER TO ABATE

August 10, 2023

George Barich
176 W. Cotati Oaks
Cotati, CA 94931


Location of Violation:

Property Address: 176 W. Cotati Oaks
AP#: 144-161-017


On or about June 1, 2023, the Code Enforcement Official for the City of Cotati, received a complaint regarding existence of possible violations on the property described above.

A subsequent investigation showed the existing conditions, among others, of impermissible vehicle storage, construction without the benefit of a permit, setback and lot coverage violations as well as a home occupation being conducted without a business license.

YOU ARE HEREBY NOTIFIED that the property identified in the "Location of Violation" above is in violation of the Cotati Municipal Code (CMC) and you are subject to administrative penalties pursuant to CMC Chapter 1.20.

On or about June 1, 2023, and continuing to date, the Responsible Parties have violated various and numerous sections of the CMC including:

1. 17.30.020(e)(2&3) Parking Within Required Setbacks. - A required setback area shall not be occupied by structures and no front or side setback shall be used for parking a motor vehicle, recreational vehicle (RV), boat, trailer, farm equipment, or other vehicle, except that an operable automobile or truck of one-ton capacity or less, in regular use, may be parked within a paved driveway.
2. §17.36.100(1)(a) A parcel with a single-family dwelling shall be allowed only one driveway
3. §9.44.020 – Use of vehicles for human habitation.
4. CA H&S §17920.3(15) (as adopted) Lack of connection to required sewage disposal system.
5. §17.36.100(c) Driveway Width and Length. Single-Family Dwellings. Each parcel with a single-family dwelling shall have a driveway with a minimum length of thirty feet measured from the back of the sidewalk, or the edge of the right-of-way where there is no sidewalk. The minimum width shall be twelve feet and the maximum width shall be twenty feet.

201 W. Sierra Ave, Cotati, CA 94931 | (707) 792-4600 | www.cotaticity.org | @cityofcotati

# City of Cotati
Sonoma County, California



6. §17.22.020(2)(a)(Table 2-2) Allowable land uses. [vehicle storage is not permitted on residential property] A land use that is not listed in Tables 2-2 and 2-3 is not allowed within the city,
7. §17.24.030 Table 2-9 Lot coverage including structures and pavement shall not exceed 40% of the area covered by structures and pavement.
8. §17.89.040 Failure to obtain building permits prior to the commencement of construction

**THE STATED VIOLATIONS ABOVE** are deemed to be a public nuisance which if not corrected or abated as required under this administrative notice and order may be found to exist and ordered to be abated after a public hearing, with abatement and related administrative costs being imposed on the responsible person and/or property owner, and collected judicially, or by special assessment or tax collection or lien, as provided under this code.

## ORDERS:

**YOU ARE HEREBY ORDERED** to correct the violation(s) by completing the following actions:

(A) To immediately cease the storage of non-owned vehicles
(B) To remove all vehicles from side, front and rear setback areas
(C) Obtain building permits to legitimize the unpermitted construction or to demolish these unpermitted improvements.
(D) To bring the property into compliance with regard to all other violations

**YOU ARE FURTHER ORDERED** to make all correction(s) no later than September 10, 2023. Failure to comply with these Orders will result in mandatory penalties and costs.

**YOU ARE FURTHER ORDERED** to appear at an Administrative Hearing for a determination of facts and findings as to allegations contained in the Administrative Notice and Order and whether penalties and costs should be imposed against you. The hearing is scheduled for:

October 5, 2023
10:00 a.m.
City Council Chambers, 201 W Sierra Avenue, Cotati

Any penalties and costs assessed against you at this hearing may constitute a special assessment lien against the real property on which the violation occurred. In addition, your failure to comply with these orders may result in additional penalties and costs assessed against you.

**YOU ARE FURTHER ORDERED** to cease and desist from permitting the violation(s) to continue, or from repeating the existing or similar violations. If you have any questions concerning this ADMINISTRATIVE NOTICE AND ORDER, you should contact the code enforcement officer who issued this order prior to the hearing date.

**YOU ARE FURTHER ORDERED** to pay the penalties and administrative costs as shown in any Administrative Enforcement Order, issued by the Hearing Officer, within 30 days of said

# City of Cotati
Sonoma County, California



Order.  The City may, upon the failure of the Responsible Parties to pay the penalty, collect any past due penalty assessed in the administrative enforcement order by all available legal means.

## FINES AND PENALTIES

A separate violation exists for each and every calendar day any violation of any provision of Cotati Municipal Code is committed, continued, or permitted. The fine for the first offense is $100; the second offense is $200 and a third offense is $500.

If you have any questions concerning this ADMINISTRATIVE NOTICE AND ORDER, you should contact the code enforcement officer who issued this order prior to the hearing date.

Payment should be made at:

   Attention: Code Enforcement
   City of Cotati
   201 W. Sierra Avenue
   Cotati, CA 94931

BY ORDER OF *R. Smith*  DATE 8/11/2023

Robert A. Smith
Code Enforcement Official
City of Cotati
707-867-2796
rsmith@cotaticity.org

† † †

# EXHIBIT D

From: **Code Officer** <codeenforce707@gmail.com>
Date: Fri, Nov 10, 2023 at 1:13 AM
Subject: Re: Monday hearing
To: Gary Weiner <gw52749@gmail.com>
Cc: Cynthia Ashmore <cashmoreattorney@gmail.com>, Robert Smith <rasmithlaw1@gmail.com>

Hello all,

Please find attached the Exhibits that Code Enforcement will be producing for the hearing. We will present the responsible party with all packets and items we use for evidence (e.g. attached packet Exh 1 - 8).

Do note since the complexity of the evidence is photo or video-based, we are preparing USB drives for all parties.

The packet is complete with exhibits 1-8 all included. On Monday all other exhibits under exhibit 7.2 - 7.4, will be produced. I will include a memo regarding how items are grouped and sorted.

Best regards

On Thu, Nov 9, 2023 at 2:07 PM Gary Weiner <gw52749@gmail.com> wrote:
Hello. Will I be receiving any information about this coming hearing prior to Monday morning? Is there a petition for hearing? Any information on the citations issued? I have no idea what the subject matter even is.

Gary Weiner
Sent From My Phone
7074831816

—

Braden Eggert

Code Enforcement Officer

City of Cotati

201 W. Sierra Ave

Cotati, CA 94931

(707) 867 - 2796

NOTICE: This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To," "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges that may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, forward, or rely on the email and its attachments in any way.

--
**"Injustice anywhere is a threat to justice everywhere."**
— Martin Luther King Jr.

NOTICE: This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To," "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges that may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, forward, or rely on the email and its attachments in any way.

--- Attachments: ----------------------------------------------------------------------------------------------------------------------

Packet Ex 1 - 8.pdf                                                                        18.7 MB

# EXHIBIT E

**Subject:** Re: Cotati v. Barich Motion for Recusal
**From:** Gary Weiner <gw52749@gmail.com>
**Date:** 4/23/2025, 11:00 AM
**To:** Robert Smith <rasmithlaw1@gmail.com>
**CC:** "Carleton L. Briggs" <clbriggs@sonic.net>, Gary Weiner <gw49@garyweiner.onmicrosoft.com>

Greetings:

The email correspondence from Briggs is a mixture of inquiry, introduction of evidence that is without proper foundation, and a "motion for recusal." The inferences drawn from the records attached are incorrect and there is no conflict nor, except perhaps in the mind of counsel, even a vaguely reasonably apprehended appearance of impropriety. Finally, counsel well knows the extent to which this officer has gone to provide Mr. Barich with robust due process.

In any event, the request or motion is denied.

Gary Weiner
707-483-1816

On Wed, Apr 23, 2025 at 8:40 AM Robert Smith <rasmithlaw1@gmail.com> wrote:

> Mr. Briggs
>
> Your manipulation of the dialogue in this matter continues with assertions without basis. The hearing officer is paid by the City. To expedite payment to all hearing officers used by the City under a Sec 130.00 hearing officers invoice my office. Payment is advanced by my office and my office is reimbursed.

Cotati uses at any time two to three experienced attorneys to act as AHOs. Hearing dates are sent out and the hearing officers select dates. It is basically first come first serve. I think you will find that all jurisdictions with their own code enforcement do essentially the same thing.

In Mr. Barich's case, sensitive to his deep seated belief in conspiracy theories and lack of trust in authority, the City went to extraordinary lengths to avoid any appearance of conflict and chose a hearing officer that had no prior connection to Cotati or my office.

The City manager has the authority under Sec. 130.080 to select:

> *"B. Hearing Officer. The city manager shall be authorized to assign a hearing officer to any person or persons, qualified by training or experience, whom the city manager may appoint or who are retained by contract to conduct such hearings. The hearing officer shall not be a city employee or an appointed city official."*

In this case, the hearing officer selected and designated by the City Manager was Mr. Weiner. The obligation and agreement is between is between the City of Cotati and the hearing officer.

Hypothetically, would it be less of an appearance of conflict if my office paid the hearing officer? I would think less. I have no monetary interest in the outcome of this proceeding while the City does. I am at a loss of the basis of your "considerable concern".

Nevertheless, I strongly object to your email and your continuing conduct in sua sponde submission of evidence, argument and now apparently a motion outside of the confines of the hearing structure.

If this is a motion for recusal, it is inappropriate in this proceeding.

It is clear that the only only evidence that can be considered by the hearing officer is found in Sec. 130.080:

*C. The hearing officer shall only consider evidence that is relevant to whether the violation occurred and/or whether a public nuisance exists, whether the recipient of the notice and order is the responsible party, and the administrative costs incurred by the city. Such relevant evidence includes, without limitation, staff reports or presentations, oral, physical, and documentary evidence regarding the alleged violation(s), proposed method of abatement, if any, and administrative costs incurred by the city.*

Additionally, your assertion in your request is based on your interpretation of billing records and is not founded in fact. You create the arguments you want from supposition not evidence. For example, your argument previously that I gave the HOA my personal phone number instead of the code enforcement number was conclusive evidence of collusion was partly based on billing records. The truth is that if you opened Mr. Barich's cell phone right now, I am betting that you will find my personal number in it. I gave it to him prior to 2021 so that he could communicate with me regarding his code enforcement complaint albeit I later had to ask him not to use it because of the high volume of calls and texts.

Lastly, as to the timing of your request, you most certainly knew from the very beginning that Mr. Weiner was being compensated by the City. I find it curious that only now, as we are near concluding the process and the issue of selective prosecution have been settled, that you suddenly have "concerns". It would be manifestly unfair and detrimental to the City if the hearing officer were to recuse himself at this point.

R. Smith

Sent from my iPhone

On **Apr 22, 2025**, at 5:09 PM, Carleton L. Briggs <<u>clbriggs@sonic.net</u>> wrote:

**Your Honor,**

A matter of considerable concern has come to my attention. The last invoice statement from Your Honor, produced by the City of Cotati in response to a PRA request, shows that $40,030.10 has been paid to Your Honor to date in George Barich's case. The City's vendor history reports over this time frame show four payments totaling approximately $12,000 to prosecuting attorney Robert Smith for reimbursement for Your Honor's services. See attached. Am I to understand that Mr. Smith, rather than the City of Cotati, has been paying Your Honor directly? Please confirm if this is the case. 1 have asked Mr. Smith to confirm if this is the case, but I have received no response.

If in fact Your Honor has been paid thousands of dollars by Mr. Smith, such was never disclosed to Respondent Barich and has just been brought to our attention. I believe that, at the very least, this creates the appearance of impropriety. I therefore would respectfully ask your Honor to recuse himself from this matter.

"The standard for disqualification provided for in subdivision (a)(6)(C) of Code Civ. Proc., § 170.1 is fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated. *Jolie v. Superior Ct. of Los Angeles Cnty.*, 66 Cal.App.5th 1025, 1039, 281 Cal.Rptr.3d 610, 619 (2021). Ethical breaches by a privately compensated temporary judge serving as a public official are far more disquieting than similar violations by private arbitrators. *Id.*, 66 Cal.App.5th 1025, at 1047, 281 Cal.Rptr.3d 610, at 626.

:Carleton L. Briggs, Counsel for Respondent

--
"The real question is not whether machines think but whether men do."
  - B.F. Skinner

Carleton L. Briggs
Law Offices of Carleton L. Briggs
740 Fourth Street, Suite 202
Santa Rosa, California 95404-4421
Telephone: (707) 523-2251, Cell: (707) 280-6323
Facsimile: (707) 523-2253
E-mail: <u>clbriggs@sonic.net</u>

PRIVILEGE and CONFIDENTIALITY NOTICE: This message and any attachments (including hyperl

Please consider the environment before printing this e-mail.

&lt;Vendor History Report - Robert Smith 01012024-08132024 (10).pdf&gt;
&lt;Vendor History Report - Robert Smith as of 04072025 (2).pdf&gt;
&lt;ALJ Invoice - 2025-08-31 - $3727.50_Redacted (4).pdf&gt;



Cotati, CA

# Vendor History Report
## By Vendor Name
Posting Date Range  -
Payment Date Range 05/01/2023 - 08/30/2024

| Payable Number | Description | | | Post Date | 1099 Payment Number | Payment Date | Amount | Shipping | Tax | Discount | Net | Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Item Description | Units | Price | Amount | | Account Number | Account Name | Dist Amount | | | | | |
| Vendor Set: 02 - City of Cotati - Operations - Contracts | | | | | | | | | | | | |
| SMI15 - ROBERT A. SMITH | | | | | | | 160,206.00 | 0.00 | 0.00 | 0.00 | 160,206.00 | 160,206.00 |
| Remittance Address: PO BOX 1463 | | | | | | | | | | | | |
| SONOMA, California 95476 | | | | | | | | | | | | |
| 2024-02-14 | CD | CODE ENFORCEMENT - GARY WEINER REIMB | | 2/14/2024 | Y  81063 | 3/7/2024 | 4,601.75 | 0.00 | 0.00 | 0.00 | 4,601.75 | 4,601.75 |
| CD | CODE ENFORCEMENT - GARY WEINER REIMB | 0.00 | 4,601.75 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 4,601.75 | | | | | |
| 2024-04-30 | CD | CODE ENFORCEMENT | | 6/30/2024 | Y  81738 | 8/9/2024 | 2,970.00 | 0.00 | 0.00 | 0.00 | 2,970.00 | 2,970.00 |
| CD | CODE ENFORCEMENT | 0.00 | 0.00 | 2,970.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 2,970.00 | | | | | |
| 2024-05-03 | CD | CODE ENFORCEMENT - GARY WEINER | | 5/3/2024 | Y  81374 | 5/16/2024 | 375.25 | 0.00 | 0.00 | 0.00 | 375.25 | 375.25 |
| CD | CODE ENFORCEMENT - GARY WEINER | 0.00 | 375.25 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 375.25 | | | | | |
| 2024-05-30 | CD | CODE ENFORCEMENT | | 6/30/2024 | Y  81738 | 8/9/2024 | 13,733.00 | 0.00 | 0.00 | 0.00 | 13,733.00 | 13,733.00 |
| CD | CODE ENFORCEMENT | 0.00 | 0.00 | 13,733.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL 13,733.00 | | | | | | |
| 2024-06-30 | CD | CODE ENFORCEMENT | | 6/30/2024 | Y  81738 | 8/9/2024 | 3,585.00 | 0.00 | 0.00 | 0.00 | 3,585.00 | 3,585.00 |
| CD | CODE ENFORCEMENT | 0.00 | 0.00 | 3,585.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 3,585.00 | | | | | |
| 230126 | CD | CODE ENFORCEMENT APR 2023 | | 4/30/2023 | Y  80067 | 8/10/2023 | 2,100.00 | 0.00 | 0.00 | 0.00 | 2,100.00 | 2,100.00 |
| CD | CODE ENFORCEMENT APR 2023 | 0.00 | 2,100.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 2,100.00 | | | | | |
| 230130 | CD | CODE ENFORCEMENT MAY 2023 | | 5/31/2023 | Y  80067 | 8/10/2023 | 7,530.00 | 0.00 | 0.00 | 0.00 | 7,530.00 | 7,530.00 |
| CD | CODE ENFORCEMENT MAY 2023 | 0.00 | 7,530.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 7,530.00 | | | | | |
| 230136 | CD | CODE ENFORCEMENT JUN 2023 | | 6/30/2023 | Y  80067 | 8/10/2023 | 5,865.00 | 0.00 | 0.00 | 0.00 | 5,865.00 | 5,865.00 |
| CD | CODE ENFORCEMENT JUN 2023 | 0.00 | 5,865.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 5,865.00 | | | | | |
| 230138 | CD | CODE ENFORCEMENT JUL 2023 | | 11/1/2023 | Y  80620 | 11/29/2023 | 8,242.50 | 0.00 | 0.00 | 0.00 | 8,242.50 | 8,242.50 |
| CD | CODE ENFORCEMENT JUL 2023 | 0.00 | 8,242.50 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 8,242.50 | | | | | |
| 230142 | CD | CODE ENFORCEMENT AUG 2023 | | 11/1/2023 | Y  80620 | 11/29/2023 | 12,157.50 | 0.00 | 0.00 | 0.00 | 12,157.50 | 12,157.50 |
| CD | CODE ENFORCEMENT AUG 2023 | 0.00 | 12,157.50 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 12,157.50 | | | | | |
| 230146 | CD | CODE ENFORCEMENT SEPT 2023 | | 11/1/2023 | Y  80620 | 11/29/2023 | 8,340.00 | 0.00 | 0.00 | 0.00 | 8,340.00 | 8,340.00 |
| CD | CODE ENFORCEMENT SEPT 2023 | 0.00 | 8,340.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 8,340.00 | | | | | |
| 230150 | CD | CODE ENFORCEMENT OCT 2023 | | 3/1/2024 | Y  81195 | 4/4/2024 | 6,465.00 | 0.00 | 0.00 | 0.00 | 6,465.00 | 6,465.00 |
| CD | CODE ENFORCEMENT OCT 2023 | 0.00 | 6,465.00 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL SVCS-CE | 6,465.00 | | | | | |
| 230154 | CD | CODE ENFORCEMENT NOV 2023 | | 3/1/2024 | Y  81195 | 4/4/2024 | 10,387.50 | 0.00 | 0.00 | 0.00 | 10,387.50 | 10,387.50 |
| CD | CODE ENFORCEMENT NOV 2023 | 0.00 | 10,387.50 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL 10,387.50 | | | | | | |
| 230158 | CD | CODE ENFORCEMENT DEC 2023 | | 3/1/2024 | Y  81195 | 4/4/2024 | 10,942.50 | 0.00 | 0.00 | 0.00 | 10,942.50 | 10,942.50 |
| CD | CODE ENFORCEMENT DEC 2023 | 0.00 | 10,942.50 | 101-25-80185-000000 | CNTRCT SVCS-PROFESSIONAL 10,942.50 | | | | | | |

**Vendor History Report**

<div align="right">Posting Date Range -</div>

| Payable Number | Description | | | Post Date | 1099 | Payment Number | Payment Date | Amount | Shipping | Tax | Discount | Net | Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Item Description | Units | Price | Amount | Account Number | | | Account Name | Dist Amount | | | | | |
| FEB 2024 | CD \| CODE ENFORCEMENT FEB 2024 | | | 5/1/2024 | Y | 81374 | 5/16/2024 | 9,900.00 | 0.00 | 0.00 | 0.00 | 9,900.00 | 9,900.00 |
| CD \| CODE ENFORCEMENT FEB 2024 | 0.00 | | 9,900.00 | 101-25-80185-000000 | | | CNTRCT SVCS-PROFESSIONAL SVCS | 9,900.00 | | | | | |
| JAN 2024 | CD \| CODE ENFORCEMENT JAN 2024 | | | 5/1/2024 | Y | 81374 | 5/16/2024 | 6,112.50 | 0.00 | 0.00 | 0.00 | 6,112.50 | 6,112.50 |
| CD \| CODE ENFORCEMENT JAN 2024 | 0.00 | | 6,112.50 | 101-25-80185-000000 | | | CNTRCT SVCS-PROFESSIONAL SVCS | 6,112.50 | | | | | |
| MAR 2024 | CD \| CODE ENFORCEMENT MAR 2024 | | | 5/1/2024 | Y | 81374 | 5/16/2024 | 12,427.50 | 0.00 | 0.00 | 0.00 | 12,427.50 | 12,427.50 |
| CD \| CODE ENFORCEMENT MAR 2024 | 0.00 | | 12,427.50 | 101-25-80185-000000 | | | CNTRCT SVCS-PROFESSIONAL SVCS | 12,427.50 | | | | | |
| Q1 2023 | CD \| CODE ENFORCEMENT Q1 2023 | | | 4/30/2023 | Y | 80002 | 7/27/2023 | 16,680.00 | 0.00 | 0.00 | 0.00 | 16,680.00 | 16,680.00 |
| CD \| CODE ENFORCEMENT Q1 2023 | 0.00 | | 16,680.00 | 101-25-80185-000000 | | | CNTRCT SVCS-PROFESSIONAL SVCS | 16,680.00 | | | | | |
| Q4 2022 | CD \| CODE ENFORCEMENT Q4 2022 | | | 4/30/2023 | Y | 80002 | 7/27/2023 | 17,391.00 | 0.00 | 0.00 | 0.00 | 17,391.00 | 17,391.00 |
| CD \| CODE ENFORCEMENT Q4 2022 | 0.00 | | 17,391.00 | 101-25-80185-000000 | | | CNTRCT SVCS-PROFESSIONAL SVCS | 17,391.00 | | | | | |

|  | Vendors: (1) | Total 02 - City of Cotati - Operations - Contracts: | 159,806.00 | 0.00 | 0.00 | 0.00 | 159,806.00 | 159,806.00 |
|---|---|---|---|---|---|---|---|---|
|  | Vendors: (1) | Report Total: | 159,806.00 | 0.00 | 0.00 | 0.00 | 159,806.00 | 159,806.00 |



Cotati, CA

# Vendor History Report
## By Vendor Name
Posting Date Range 07/01/2024 - 06/30/2025

Payment Date Range  -

| Payable Number | Description | | | Post Date | 1099 | Payment Number | Payment Date | Amount | Shipping | Tax | Discount | Net | Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Item Description | Units | Price | Amount | | | | | | | | | | |

**Vendor Set: 02 - City of Cotati - Operations - Contracts**

SMI15 - ROBERT A. SMITH

| | | | | | | | | 28,689.74 | 0.00 | 0.00 | 0.00 | 28,689.74 | 28,689.74 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024-07-31 | CD \| CODE ENFORCEMENT REIMBURSABLES/31/2024 | | | | Y | 82775 | 4/3/2025 | 918.75 | 0.00 | 0.00 | 0.00 | 918.75 | 918.75 |
| CD \| CODE ENFORCEMENT REIMBURSABLES - JUL 2024 | | | 918.75 | | | | | | | | | | |
| 2024-08-31 | CD \| CODE ENFORCEMENT REIMBURSABLES/31/2024 | | | | Y | 82775 | 4/3/2025 | 3,727.50 | 0.00 | 0.00 | 0.00 | 3,727.50 | 3,727.50 |
| CD \| CODE ENFORCEMENT REIMBURSABLES - AUG 2024 | | | 3,727.50 | | | | | | | | | | |
| 2024-10-30 | CD \| CODE ENFORCEMENT OCT 2024 | | | 2/19/2025 | Y | 82646 | 3/6/2025 | 4,125.00 | 0.00 | 0.00 | 0.00 | 4,125.00 | 4,125.00 |
| CD \| CODE ENFORCEMENT | 0.00 | 0.00 | 4,125.00 | | | | | | | | | | |
| 2024-11-30 | CD \| CODE ENFORCEMENT NOV 2024 | | | 2/19/2025 | Y | 82646 | 3/6/2025 | 3,652.50 | 0.00 | 0.00 | 0.00 | 3,652.50 | 3,652.50 |
| CO \| CODE ENFORCEMENT | 0.00 | 0.00 | 3,652.50 | | | | | | | | | | |
| 2025-01-31 | CD \| CODE ENFORCEMENT REIMBURSABLES/31/2025 | | | | Y | 82775 | 4/3/2025 | 3,255.00 | 0.00 | 0.00 | 0.00 | 3,255.00 | 3,255.00 |
| CD \| CODE ENFORCEMENT REIMBURSABLES - JAN 2025 | | | 3,255.00 | | | | | | | | | | |
| CO-2024-07-30 | CD \| CODE ENFORCEMENT JULY 2024 | | | 2/6/2025 | Y | 82519 | 2/7/2025 | 2,902.50 | 0.00 | 0.00 | 0.00 | 2,902.50 | 2,902.50 |
| CD \| CODE ENFORCEMENT JULY 2024 | | 0.00 | 2,902.50 | | | | | | | | | | |
| CO2024-08-30 | CD \| CODE ENFORCEMENT AUG 2024 | | | 2/6/2025 | Y | 82519 | 2/7/2025 | 7,732.50 | 0.00 | 0.00 | 0.00 | 7,732.50 | 7,732.50 |
| CD \| CODE ENFORCEMENT AUG 2024 | | 0.00 | 7,732.50 | | | | | | | | | | |
| CO2024-09-30 | CD \| CODE ENFORCEMENT SEP 2024. | | | 12/11/2024 | Y | 82519 | 2/7/2025 | 1,102.50 | 0.00 | 0.00 | 0.00 | 1,102.50 | 1,102.50 |
| CD \| CODE ENFORCEMENT SEP 2024 | | 0.00 | 1,102.50 | | | | | | | | | | |
| CO-2024-10-04 | CD \| CODE ENFORCEMENT OCT 2024 | | | 10/4/2024 | Y | 82104 | 10/31/2024 | 1,273.49 | 0.00 | 0.00 | 0.00 | 1,273.49 | 1,273.49 |
| CD \| CODE ENFORCEMENT OCT 2024 | | 0.00 | 1,273.49 | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Vendors: (1) | **Total 02 - City of Cotati - Operations - Contracts:** | | | | 28,689.74 | 0.00 | 0.00 | 0.00 | 28,689.74 | 28,689.74 |
| | | | Vendors: (1) | **Report Total:** | | | | 28,689.74 | 0.00 | 0.00 | 0.00 | 28,689.74 | 28,689.74 |

**Law Offices of Robert A. Smith**
**PO Box 1463**
**Sonoma CA 95476**

**Invoice**

March 31, 2025

City of Cotati

Attn: Accounts payable

Invoices for Gary Weiner for Cotati Code Enforcement Hearing Officer

August, 2024 services.... $3,727.50

Invoice copy attached

| | |
|---|---|
| **Vendor:** | SMI15 |
| **Payable ID:** | 2024-08-31 |
| **Amount:** | $3,727.50 |
| **PO #** | |
| **GL Account:** | |
| **Invoice Descripti** | CD \| CODE ENFORCEMENT REIMBURSABLES AUG 2 |
| **Post Date:** | 3/31/2025 |
| **Invoice Date:** | 3/31/2025 |
| **Due Date:** | 3/31/2025 |
| **Payable Type:** | i |

**Gary Weiner, Lawyer & Mediator**
Box 118
Sebastopol, CA 95473
Phone: ▮▮▮▮▮
Email: ▮▮▮▮▮▮

# INVOICE

PAY NOW

**Cotati Code Enforcement Hearing Officer 1**

| Invoice Date | Invoice Number |
|---|---|
| 09/03/2024 | ▮▮▮▮ |
| **Terms** | **Service Through** |
| N/A | 09/30/2024 |

| Date | By | Services | Hours | Amount |
|---|---|---|---|---|
| 08/05/2024 | GW | Initial, cursory review of Reply brief | 0.25 | $ 131.25 |
| 08/08/2024 | GW | Copies B/W 8. 170 @ 0.13    22.10 TX | | $ 22.10 |
| 08/14/2024 | GW | Detailed review of respondent brief in support of motion to dismiss and alderman declaration. Draft notes to self regarding review of saying. | 1.50 | $ 787.50 |
| 08/15/2024 | GW | Review, analysis and annotation of Declaration of respondent in support of motion to dismiss | 1.00 | $ 525.00 |
| 08/19/2024 | GW | Thorough review of supplemental Declaration of respondent | 0.40 | $ 210.00 |
| 08/19/2024 | GW | Review and annotate reply brief | 0.75 | $ 393.75 |
| 08/19/2024 | GW | Review and annotate Smith declaration | 0.25 | $ 131.25 |
| 08/19/2024 | GW | Review and annotate respondent reply to cities opposition. | 0.25 | $ 131.25 |
| 08/23/2024 | GW | collate notes on motion to dismiss | 0.30 | $ 157.50 |
| 08/26/2024 | GW | review notes on motion to dismiss briefs and declarations, legal research, draft SUPPLEMENTAL ORDER ON MOTION TO DISMISS | 2.40 | $ 1,260.00 |

| | |
|---|---|
| **Total Hours** | 7.10 hrs |
| **Total Billable** | $ 3,727.50 |
| **Total Expenses** | $ 22.10 |
| **Total Invoice Amount** | $ 3,749.60 |
| **Previous Balance** | $ 918.75 |
| 8/28/2024  Payment - Bill4Time Payments (eCheck) Payment made via Client Portal with bank account. | ($918.75) |

| Balance (Amount Due) | $ 3,749.60 |
| --- | --- |

Gary Weiner, Lawyer & Mediator - Account Activity

Date Start: 11/1/2023 | Date End: 2/28/2025 | Clients: Cotati Code Enforcement Hearing Officer 1 | Matters: | Account Managers: All | Matter Type: All | Group By: Account Isolation Setting

| Date | Item Detail | Description | Credit Amount | Debit Amount | Balance |
|---|---|---|---|---|---|
| **Cotati Code Enforcement Hearing Officer 1** | | | | | |
| 12/01/2023 | Invoice:20948 (Paid) | Multiple invoice batch | | $3,634.00 | $3,634.00 |
| 01/01/2024 | Invoice:20955 (Unpaid) | Multiple invoice batch | | $967.75 | $4,601.75 |
| 01/05/2024 | Payment:1703 | Payment made via Client Portal with bank account. | $4,601.75 | | $0.00 |
| 02/08/2024 | Invoice:20962 (Unpaid) | Multiple invoice batch | | $8,808.50 | $8,808.50 |
| 03/04/2024 | Invoice:20970 (Paid) | Multiple invoice batch | | $5,016.50 | $13,825.00 |
| 03/06/2024 | Payment:1718 | Payment made via Client Portal with bank account. | $13,825.00 | | $0.00 |
| 04/01/2024 | Invoice:20979 (Paid) | Multiple invoice batch | | $3,535.25 | $3,535.25 |
| 04/03/2024 | Payment:1723 | Payment made via Client Portal with bank account. | $3,535.25 | | $0.00 |
| 05/01/2024 | Invoice:20986 (Paid) | Multiple invoice batch | | $375.25 | $375.25 |
| 05/02/2024 | Payment:1728 | Payment made via Client Portal with bank account. | $375.25 | | $0.00 |
| 06/05/2024 | Invoice:20990 (Paid) | Multiple invoice batch | | $2,942.75 | $2,942.75 |
| 06/16/2024 | Payment:1735 | Payment made via Client Portal with bank account. | $2,942.75 | | $0.00 |
| 06/27/2024 | Invoice:20996 (Paid) | Multiple invoice batch | | $2,626.75 | $2,626.75 |
| 07/01/2024 | Payment:1741 | Payment made via Client Portal with bank account. | $2,626.75 | | $0.00 |
| 08/01/2024 | Invoice:21004 (Paid) | Multiple invoice batch | | $918.75 | $918.75 |
| 08/28/2024 | Payment:1752 | Payment made via Client Portal with bank account. | $918.75 | | $0.00 |
| 09/03/2024 | Invoice:21015 (Paid) | Multiple invoice batch | | $3,749.60 | $3,749.60 |
| 09/11/2024 | Payment:1758 | Payment made via Client Portal with bank account. | $3,749.60 | | $0.00 |
| 10/10/2024 | Invoice:21033 (Paid) | Multiple invoice batch | | $105.00 | $105.00 |
| 10/10/2024 | Payment:1763 | Payment made via Client Portal with bank account. | $105.00 | | $0.00 |
| 11/05/2024 | Invoice:21042 (Unpaid) | Multiple invoice batch | | $1,181.25 | $1,181.25 |
| 12/05/2024 | Invoice:21051 (Paid) | Multiple invoice batch | | $813.75 | $1,995.00 |
| 12/11/2024 | Payment:1771 | Payment made via Client Portal with bank account. | $1,995.00 | | $0.00 |
| 01/04/2025 | Invoice:21058 (Paid) | Multiple invoice batch | | $2,100.00 | $2,100.00 |
| 01/13/2025 | Payment:1775 | Payment made via Client Portal with bank account. | $2,100.00 | | $0.00 |
| 02/03/2025 | Invoice:21062 (Paid) | Multiple invoice batch | | $3,255.00 | $3,255.00 |
| 02/04/2025 | Payment:1777 | Payment made via Client Portal with bank account. | $3,255.00 | | $0.00 |
| 02/28/2025 | Unbilled Activity | | | $420.00 | |

**Totals for Cotati Code Enforcement Hearing Officer 1**

Invoiced: $40,030.10
Payments: $40,030.10
Debit Adjustments: $0.00
Credit Adjustments: $0.00
Unbilled: $420.00
Balance w/Unbilled: $420.00
Account Balance Due: $0.00

**Grand Total**

Invoiced: $40,030.10
Payments: $40,030.10
Debit Adjustments: $0.00
Credit Adjustments: $0.00
Unbilled: $420.00
Balance w/Unbilled: $420.00
Account Balance Due: $0.00

# EXHIBIT F

## ORDER ON RENEWED MOTION TO RECUSE

August 22, 2025

1. I previously issued an order denying a motion to recuse in April of 2025 by email:

   *The email correspondence from Briggs is a mixture of inquiry, introduction of evidence that is without proper foundation, and a "motion for recusal." The inferences drawn from the records attached are incorrect and there is no conflict or, except perhaps in the mind of counsel, even a vaguely reasonably apprehended appearance of impropriety. Finally, counsel knows well the extent to which this officer has gone to provide Mr. Barich with robust due process.*

   *In any event, the request or motion is denied.*

2. Mr. Smith does not "pay" me out of his own pocket. The City of Cotati pays my charges. To the extent that Smith was involved, it was solely as a conduit.
3. Smith and I never discussed the bills; he simply facilitated payment to the best of my knowledge.
4. I have been trained as a neutral over the course of hundreds of hours here and abroad and have taught mediation and arbitration here and abroad at law schools and courthouses.
5. I have made it my mission as a dispute resolution professional of many years standing, to be dispassionate, fair, and free of bias to the extent I am able.
6. Payment of my fees has never affected this central tenet of my professional practice. And it has not in this case.
7. I have afforded Mr. Barich due process beyond the bare minimum required.
8. The process has been fair.

To the extent that Mr. Briggs is renewing his motion to recuse, it is again denied.

**IT IS SO ORDERED.**

*Gary Weiner*

Gary Weiner, Hearing Officer

# EXHIBIT G

**Subject:** Cotati v. Barich - Letter Brief re Rule 3.7
**From:** "Carleton L. Briggs" <clbriggs@sonic.net>
**Date:** 6/2/2025, 2:23 PM
**To:** Gary Weiner <gw49@garyweiner.onmicrosoft.com>, Gary Weiner <gw52749@gmail.com>, Robert Smith <rasmithlaw1@gmail.com>

At the telephonic Case Management Conference in the above matter, Your Honor invited letter briefs on the issue of Rules of Prof. Conduct, Rule 3.7 and Mr. Smith's acting both as lawyer and witness in these proceedings without the prior informed written consent from the City of Cotati.

California Rule of Professional Conduct, Rule 3.7, the Lawyer as Witness Rule, prohibits a lawyer from acting as an advocate in a trial in which the lawyer is likely to be a witness unless the lawyer has obtained informed written consent from the client. Rule 3.7 (a). This rule applies to a trial before a jury, judge, administrative law judge or arbitrator. Rule 3.7, Comment [1]. Courts have interpreted "trials" more broadly than just a trial itself. In *Doe v. Yim*, for example, the court interpreted trials in this context to include pre-trial evidentiary hearings. *Doe v. Yim* (2020) 55 Cal.App.5th 573 at 583; see also *Lopez v. Lopez*, 81 Cal.App.5th 412, 424 (2022) (citing *Doe v. Yim*).

On May 27, 2025, the City of Cotati responded to a Public Records Act Request from Laurie Alderman for the City's informed written consent for Mr. Smith to act as both lawyer and witness in the Barich matter, indicating that the there is no such record.

As Your Honor will recall, at first Mr. Smith claimed that the City of Cotati was not his client. When counsel for Respondent provided Mr. Smith's professional services contract between the City of Cotati and "Attorney Robert Smith" (attached), Mr. Smith then claimed that he was not employed as an attorney but rather as a code enforcement official. However, Mr. Smith's contract specifically provides for his function as Attorney Supervisor. See attached contract, Exhibit A. Furthermore, as discussed at the case management conference, it is undisputed that Mr. Smith called and cross-examined witnesses, made oral argument, made and responded to motions, etc., thus acting as lawyer for the City.

In addition to the *Donaldson* case already provided, Respondent hereby submits the following additional authorities, cited by the State Bar Ethics Hotline:

*People v. Dunkle* (2005) 36 Cal.4th 861 [32 Cal.Rptr.3d 23]:

   An attorney must withdraw from representation, absent the client's informed written consent, whenever he or she knows or should know he or she ought to be a material witness in the client's cause. (Rules Prof. Conduct, rule 5-210.)

*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197 [135 Cal.Rptr.3d 545]:

   No California case has held that only a client or former client may bring a disqualification motion. The reason is simple: " 'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers,

and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." [Citations.]' [Citations.] '[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.' " (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1355, 114 Cal.Rptr.3d 301.)

"Protection of the attorney-client privilege is not the only ground for a motion to disqualify an attorney." (*Meza v. H. Muehlstein & Co., Inc.* (2009) 176 Cal.App.4th 969 at p. 980, 98 Cal.Rptr.3d 422.) "[T]he court has an *independent interest* in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them." (*In re A.C.* (2000) 80 Cal.App.4th 994, 1001, 96 Cal.Rptr.2d 79, italics added.)

As Mr. Smith has acted as lawyer and witness in this matter without the City's prior informed written consent, he has violated Rule 3.7, regardless of any prejudice to his client or Respondent. Respondent moves that Your Honor disqualify Mr. Smith, or in the alternative, strike all first-hand evidence in the testimony and declarations of Mr. Smith in this matter.

Carleton L. Briggs, Counsel for Respondent

```
--
"The stupidity of men always invites the insolence of power."
   - Ralph Waldo Emerson


Carleton L. Briggs
Law Offices of Carleton L. Briggs
740 Fourth Street, Suite 202
Santa Rosa, California 95404-4421
Telephone: (707) 523-2251, Cell: (707) 280-6323
Facsimile: (707) 523-2253
E-mail: clbriggs@sonic.net

PRIVILEGE and CONFIDENTIALITY NOTICE: This message and any attachments (including hyperlinks)

Please consider the environment before printing this e-mail.
```

---Attachments:---

Cotati.Barich.34 - Agreements Contracts and Leases(50) (1).pdf                    4.8 MB

# EXHIBIT H

**Subject:** Barich
**From:** Gary Weiner <gw52749@gmail.com>
**Date:** 8/18/2025, 11:38 AM
**To:** Steve Ngo <Steve.Ngo@redwoodpubliclaw.com>, "Carleton L. Briggs" <clbriggs@sonic.net>
**CC:** Laura Krieg <paralegalkrieg@gmail.com>

Gentlemen: I had previously been asked to send my invoices to Mr. Smith. There are several outstanding and balances are due. To whom should I address them now?

Gary Weiner
707-483-1816

EXHIBIT I

# CITY OF COTATI

MEMORANDUM OF SERVICES
Transfer of Contracting Party – Administrative Update

To: Gary Weiner

From: City of Cotati – Administrative Services Department

Date: December 8, 2025

Subject: Administrative Transfer of Contract Services Agreement

## Purpose of Memorandum

This memorandum serves to formally document the administrative transition of the professional services arrangement previously established between Robert Smith and Gary Weiner. Going forward, and consistent with the requirements of the City of Cotati's Professional Services Agreement (PSA), all services will be contracted directly between the City of Cotati ("City") and Gary Weiner ("Consultant"). This action aligns the engagement with City procurement standards, legal requirements, and administrative processes, and ensures continuity of services without interruption.

## Scope of Services

The Consultant shall provide professional services to the City in the capacity of an Administrative Hearing Officer. Services shall include, but are not limited to:

- Conducting administrative hearings in accordance with Cotati Municipal Code Chapter 1.30 (Administrative Notice and Order), including Section 1.30.080 (Hearing Procedure) and Section 1.30.090 (Hearing Officer's Decision), attached as Exhibit A.

## Compliance With City Professional Services Requirements

- Independent Contractor Status

  Consultant shall perform all services as an independent contractor and not as an employee of the City. Consultant shall be responsible for all taxes, insurance, and obligations associated with independent contractor status.

- Insurance Requirements

  Consultant shall maintain insurance consistent with the PSA, including but not limited to: Commercial General Liability, Professional Liability (Errors & Omissions), Automobile Liability (if required), and Workers' Compensation or an approved exemption. The City of Cotati shall be named as an additional insured where applicable. (Exhibit C)

- Invoicing and Payment Requirements

  Invoices must be addressed to the City of Cotati, reflect hours worked, the hourly rate, dates of service, and a summary of tasks performed, and be submitted monthly unless otherwise authorized. Payments will be processed in accordance with the City's standard AP schedule.

- Conflict of Interest Compliance

  Consultant affirms compliance with applicable conflict-of-interest laws, including Government Code §1090, the Political Reform Act, and City disclosure requirements.

Page 1 of 2

MEMORANDUM OF SERVICES
Transfer of Contracting Party – Administrative Update
December 8, 2025

- Confidentiality and Records

  All documents, case files, hearing records, and work products produced under this engagement become property of the City and may be subject to the Public Records Act. Consultants shall protect the confidentiality of all non-public information in accordance with law.

- Termination and Amendment

  The City reserves the right to terminate or amend this agreement without cause upon ten (10) days' written notice.  City may immediately terminate or suspend this Agreement for cause. Cause for immediate termination or suspension shall include, but not be limited to, any breach of this Agreement by Consultant or Consultant's bankruptcy or insolvency.  Upon receipt of notice of termination or suspension for cause, Consultant shall immediately stop all work in progress under this Agreement. In the event of early termination of this Agreement by City, Consultant shall be entitled to payment for all Services performed to the date of termination to the extent such Services were performed to the satisfaction of City in accordance with the terms and conditions of this Agreement.  If City terminates this Agreement for cause, Consultant shall be liable to City for any excess cost City incurs for completion of the Services.

**Effective Date**
This administrative transfer becomes effective upon full execution by both parties.

**Acknowledgment and Acceptance**
By signing below, the Consultant acknowledges the transfer of the contracting relationship to the City of Cotati and agrees to perform services in accordance with this memorandum and the applicable provisions of the originating agreement.

City of Cotati

By: _DAMJEN O'BJD_

Name: Damien O'Bid

Title: City Manager

Consultant – Gary Weiner

By: _Gary Weiner_

Name: Gary Weiner

Title: Independent Contractor

Page 2 of 2

# Exhibit A

*City of Cotati, CA*
*Monday, December 8, 2025*

## Title 1. General Provisions

## Chapter 1.30. ADMINISTRATIVE NOTICE AND ORDER

# § 1.30.010. General enforcement authority for this chapter and purpose.

The purpose and intent of this chapter is to effectively enforce violations of this code committed on a continuing or ongoing basis. This chapter is adopted pursuant to the municipal affairs provision contained in Section 7 of Article XI of the Constitution of the State of California and Government Code Section **36900** for the purpose of making any violation of this code or of any ordinance enacted by the Cotati city council subject to administrative fines, remedies, and penalties, to set forth the procedures authorized in Government Code Section **53069.4** for the imposition, enforcement, collection, and administrative review of such fines and penalties, and to redress and enforce violations of this code that constitute public nuisances through a nuisance abatement mechanism. This chapter shall be used at the sole discretion of the city.
(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.020. Violations of an ordinance subject to an administrative fine, administrative costs, or remedy.

This section declares that a violation of this code or of any ordinance enacted by the Cotati city council may be subject to an administrative fine, administrative costs, or remedy in accordance with the provisions of this chapter. The procedures are activated by an administrative notice and order, which may be used at the sole discretion of the city of Cotati. The remedies provided by this chapter shall be in addition to and cumulative of all other remedies, criminal or civil, which may be pursued by the city of Cotati to address any violation of its ordinances.
(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.030. Definitions.

A.  Responsible Person. For the purposes of this chapter, a "responsible person" is a person or person's agent, employee, or independent contractor who causes, permits, allows, maintains, contributes, conceals, or aids or abets the property-related code violation, including a property owner of record, property manager, tenant, subtenant, occupant, or any person in possession of property where the code violation exists. Each responsible party shall be jointly and severally liable for any and all fines, fees, penalties, and administrative costs awarded, upheld, assessed, or imposed under this chapter.

B. For the purposes of this chapter, "person" includes a natural person or legal entity, and the owners, majority stockholders, corporate officers, trustees, and general partners of a legal entity.

C. Enforcement Officer. For the purposes of this chapter, an "enforcement officer" shall mean any city of Cotati employee, contractor, or agent of the city authorized to enforce any provision of this code or this chapter.

D. Violation. For purposes of this chapter, "violation" includes a separate violation for each and every calendar day during any portion of which any violation of any provision of this code is committed, continued, or permitted by any responsible person.

E. Fines. For purposes of this chapter, "fine" or "fines" refers to any fines, fees, or penalties assessed or imposed by the city or order of the hearing officer under this chapter, not including administrative costs.

F. City Manager. For purposes of this chapter, "city manager" refers to the city manager of Cotati or his or her designee.

G. Administrative Costs. For purposes of this chapter, "administrative costs" shall include any and all costs incurred by the city in connection with the matter before the hearing officer, including but not limited to costs of investigation, staffing costs incurred in preparation for the hearing and for the hearing itself, the services of the hearing officer, any abatement costs, costs for all inspections, and attorneys' fees.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.040. Fines.

The city council may establish the amounts of fines for violations of this code imposed pursuant to this chapter through a schedule of fines established by resolution of the city council.
(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.050. Administrative notice and order.

A. Whenever a code enforcement officer determines that a violation of a provision of this code has occurred, the code enforcement officer may issue an administrative notice and order to the responsible party for the violation.

B. Each administrative notice and order shall contain the following information:

1. Date of violation or date violation is identified and address or definite description of the location of the violation(s), such as the street address or tax assessor parcel number (APN);

2. The code sections or conditions violated and a description of the violation(s);

3. A description of the action necessary to correct the violation and reasonable time not less than ten calendar days to correct the violation prior to the imposition of fines;

4. The amount of the fine for the code violation(s);

5. An explanation of how the fine shall be paid, the time period by which it shall be paid, and the consequences of failure to pay the fine;

6. An order prohibiting the continuation or repeated occurrence of the violation and an explanation of the consequences for failing to correct the violation, including that a

separate violation exists for each and every calendar day any violation of any provision of this code is committed, continued, or permitted;

7. A description of the administrative review procedures, including the time, date and place of the hearing, which shall be no less than ten calendar days after the date of the administrative notice and order. The description shall also state that the purpose of the hearing will be to make a determination on the existence of the violation(s), public nuisance, and on whether to adopt the administrative order, including the imposition of fines and administrative costs under this chapter;

8. The name, date, and signature of the issuing enforcement officer; and

9. A statement that any violation of this code is deemed to constitute a public nuisance, which if not corrected or abated as required under this administrative notice and order may be found to exist and ordered to be abated after a public hearing, with abatement and related administrative costs being imposed on the responsible person and/or property owner, and collected judicially, or by special assessment or tax collection or lien, as provided under this code.

C. Nothing in this chapter shall preclude, limit, prohibit, restrict, or otherwise prevent the city under this code or state or federal law from taking immediate action, including the immediate issuance of an administrative citation, administrative notice and order, or summary abatement, for violations of this code that pertain to continuing or ongoing building, plumbing, electrical or other similar structural or zoning issues that create an immediate danger to health or safety.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.060. Recordation of administrative notice and order.

A. If the responsible person does not comply with the administrative notice and order within a reasonable time designated in the notice and order, the code enforcement officer may file in the office of the county recorder a certificate describing the property and certifying the following:

1. That the building, structure, or property is in violation of this code; and

2. That the owner has been so notified.

B. This certificate may be filed either prior to the administrative hearing designated in the administrative notice and order, or prior to any continuance thereof, or within a reasonable time following the issuance of the hearing officer's decision pursuant to Section **1.30.090**.

C. Whenever the corrections ordered in the administrative notice and order have been abated, repaired, or corrected to the extent that a violation no longer exists, the code enforcement officer shall, at his/her sole discretion, either file, or cause to be filed, with the county recorder or, in lieu of such filing, provide to the property owner with notice a new certificate certifying that the building, structure, or property has been brought into compliance with the administrative notice and order, or that all required corrections have been made so that the building, structure, or property conforms to the requirements contained in the administrative notice and order.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.070. Service procedures.

A. Service of the notices under this chapter shall be made by any of the following methods:

1. Personal service; or

2. Prepaid first class United States Postal Service; or

3. Posting the notice conspicuously on or in front of the property; or

4. Printed verification of notice by electronic mail (email).

B. Where real property is in violation of this code, written notice shall be personally served or mailed to the property owner at the address as shown on the most current publicly available equalized county property tax assessment roll. In addition, a copy of the notice shall be conspicuously posted at the property which is in violation of this code.

C. Notwithstanding the method of delivery, the failure of any person with an interest in the property to receive any notice served in accordance with this section shall not affect the validity of any proceedings taken under this code.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.080. Hearing procedure.

A. The purpose of the hearing is to provide a review of the administrative notice and order by a hearing officer and an opportunity to the person subject to a notice and order to object to the determination that a violation has occurred and/or that the violation has continued to exist or that a public nuisance exists.

B. Hearing Officer. The city manager shall be authorized to assign a hearing officer to any person or persons, qualified by training or experience, whom the city manager may appoint or who are retained by contract to conduct such hearings. The hearing officer shall not be a city employee or an appointed city official.

C. The hearing officer shall only consider evidence that is relevant to whether the violation occurred and/or whether a public nuisance exists, whether the recipient of the notice and order is the responsible party, and the administrative costs incurred by the city. Such relevant evidence includes, without limitation, staff reports or presentations, oral, physical, and documentary evidence regarding the alleged violation(s), proposed method of abatement, if any, and administrative costs incurred by the city.

D. The hearing is intended to be informal in nature. Formal rules of evidence and discovery do not apply. The city manager may, from time to time, adopt procedures for the format and proceedings of the administrative hearing. The person contesting the administrative notice and order shall be given the opportunity to testify and present witnesses and evidence. The city shall have the burden of proof by preponderance of the evidence to establish that the responsible person committed the violation specified in the notice and order.

E. Each witness, prior to providing oral testimony, shall be sworn by the hearing officer or his or her designee. Each party shall have the opportunity to cross-examine witnesses and present evidence in support of the party's cause.

F. The failure of a responsible party named in an administrative notice and order to appear at the administrative notice and order hearing shall constitute a failure to exhaust the party's administrative remedies.

G. On the hearing officer's own discretion or upon request by any party, the hearing officer may continue the hearing and request additional information from any person or witness prior to issuing a written decision. Notice of the continued hearing must be given to each party and shall include the time, date, and place to which the hearing is to be continued.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.090. Hearing officer's decision.

A. After considering all of the testimony and evidence submitted at the hearing or continued hearing, the hearing officer shall issue a written decision setting forth the findings supporting the decision within forty-five calendar days of the hearing. The decision is to be entitled "administrative enforcement order" and shall either uphold or cancel the administrative notice and order as to each named responsible party. The decision shall list the findings in support of the decision and the imposition of administrative costs and/or fines. When the administrative enforcement order directs the abatement of a violation, including a nuisance, the violation may be corrected or abated as authorized within this chapter or as otherwise permitted by law.

B. If the hearing officer determines that a public nuisance exists, then the written decision shall also include:

     1. A description of the nuisance, which, if based upon a violation of this code, shall identify the provision being violated including the factual findings and determinations supporting the decision; and

     2. An order to correct or abate the nuisance by a certain date, which if not complied with shall direct that the city take those steps necessary and authorized by law to enter onto the property and abate the nuisance at the cost of the property owner through a special assessment or lien as provided in Section **1.20.040**.

C. When the administrative enforcement order directs that the nuisance be corrected or abated, it shall also impose the fines and assess administrative costs against each responsible party incurred up to the date of the administrative hearing. The administrative enforcement order shall include notice to each responsible party that administrative costs incurred up to the date of the administrative hearing may become the subject of a lien or special assessment against the property where the violations occurred and payment is not received for such administrative costs within thirty calendar days of date of the order.

D. If the hearing officer determines that the administrative notice and order should be upheld as to a responsible party, then the hearing officer shall impose and assess the prescribed fine against each responsible party.

E. The order shall also state the date all payments are due and the fines for any late payment for any amount ordered by the hearing officer and that, if the violation continues, the responsible party may be subject to additional fines or administrative costs, as authorized by law. The order shall also state that fines and administrative costs shall also be collectible as set forth under Section **1.28.100**.

F. If the hearing officer determines that the administrative notice and order should be canceled in whole or in part, then the case shall be terminated as to that responsible party.

G. The written decision shall be served upon each party in the manner set forth by Section **1.30.070** or by any other means agreed to by each party, including email, fax, or other means. When the administrative enforcement order is served on the code enforcement officer, the order shall be deemed final.

H. Failure to Commence Work. Whenever the required repair or demolition of a substandard building or structure, as determined by the code enforcement officer, is not commenced within thirty calendar days after any final administrative enforcement order issued under this chapter becomes effective:

     1. The code enforcement officer shall cause the building, structure, or other property described in such order to be vacated by posting at each entrance thereto a notice reading:

<div align="center">SUBSTANDARD BUILDING</div>

DO NOT OCCUPY

It is a misdemeanor to occupy this building, or to remove or deface this notice.

Code Enforcement Officer

City of Cotati.

2. No person shall occupy any building that has been posted as specified in this subsection. No person shall remove or deface any such notice so posted until the repairs, demolition, or removal ordered by the code enforcement officer has been completed and, where applicable, a certificate of occupancy issued pursuant to the provisions of the building code.

3. Code enforcement officers are authorized to enter upon any property or premises within the city to abate, repair, or demolish any building, structure, or other property pursuant to an administrative enforcement order. If an owner, occupant, or agent refuses permission to enter, inspect, abate, repair, or demolish anything described in such order, the code enforcement officer may seek an administrative inspection/abatement warrant pursuant to the procedures provided for in California Code of Civil Procedure Section **1822.50** et seq., as may be amended from time to time.

4. The code enforcement officer may, in addition to any other remedy herein provided, cause the building, structure, or other property to be repaired to the extent necessary to correct the conditions that render the building substandard as set forth in the administrative enforcement order; or, if the administrative enforcement order required demolition or abatement, to cause the building, structure, or other property to be sold and demolished; or to be demolished, and the materials, rubble and debris therefrom removed and the lot cleaned. Any such repair or demolition work shall be accomplished, and the cost thereof paid and recovered, in the manner hereinafter provided in this chapter. Any surplus realized from the sale of any such building, or from the demolition thereof, over and above the cost of demolition and of cleaning the lot shall be paid over to the person or persons lawfully entitled thereto.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.100. Collection of unpaid fines or administrative costs.

The city may collect any past due fines assessed and/or administrative costs in the administrative enforcement order by all available legal means.
(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.110. Right to judicial review.

A. The decision of the hearing officer shall be deemed the final administrative order of the city.

B. Any person who is aggrieved by the decision of the hearing officer may obtain judicial review of such decision by filing an appeal to be heard in the Sonoma County superior court in accordance with California Government Code Section **53069.4**. If no appeal is filed with the superior court within twenty calendar days after service, then the written decision is hereby deemed confirmed. In the event that a copy of the notice of appeal is served in person or by first class mail upon the city of Cotati by the contestant-appellant pursuant to the appeal to the superior court, the time for payment shall be suspended from the date of said service until the judgment of the court is final.

C.  Public Nuisance Finding. Any finding in an administrative enforcement order that a nuisance exists and any order made within an administrative enforcement order to abate or correct the nuisance shall constitute a final, administrative determination, shall not be appealable, and shall be subject to judicial review in the Sonoma County superior court by filing with the court a petition for writ of mandate pursuant to the provisions and time limits set in Code of Civil Procedure Section **1094.6**.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.120. Private right of enforcement against responsible parties.

Any person, entity, association, or organization aggrieved by a willful violation of any provision of this chapter, where the owner(s) of a property has failed or refused to correct and/or abate a violation under this chapter for forty calendar days after the administrative order becomes final, shall have the right to file an action and/or proceeding for injunctive relief and damages against the owner(s) of such property. Any person, entity, association, or organization which prevails or is successful in any such action or proceeding shall be entitled, in addition to any other relief, to recover all reasonable costs, expenses and attorneys' fees incurred in such action or proceeding. Treble damages also shall be awarded for such willful failure to comply with this chapter.

(Ord. 886 § 2 Exh; A (part), 2019)

# § 1.30.130. Code compliance funding – General.

A.  The city council shall establish a department in the general fund to be designated as the code compliance department.

   1.  Revenue to the department shall include, but is not limited to, assessments and personal obligations made pursuant to this chapter.

   2.  Transfers or expenditures from the code compliance department shall be budgeted for and approved by the city council in accordance with the city's financial policies.

B.  When any work, including but not limited to repair, demolition, or abatement, is to be done pursuant to this chapter, the city manager, under his or her signing authority under this code, shall cause the work to be accomplished by city personnel or by private contract. Any amount in excess of the city manager's signature authority shall be approved by the city council. Plans, specifications, and other work requirements necessary to accomplish the objectives of this chapter therefore may be prepared by or at the direction of the city manager, who may employ such labor or professional services on a contract basis as may be deemed reasonably necessary.

(Ord. 886 § 2 Exh; A (part), 2019)

## EXHIBIT C

### INSURANCE REQUIREMENTS FOR PROFESSIONAL SERVICES

Consultant shall procure and maintain for the duration of the contract insurance against claims for injuries to persons or damages to property which may arise from or in connection with the performance of the work hereunder by the Consultant, its agents, representatives, or employees.

### MINIMUM SCOPE AND LIMIT OF INSURANCE

Coverage shall be at least as broad as:

1. Commercial General Liability (CGL): Insurance Services Office Form CG 00 01 covering CGL on an "occurrence" basis, including products and completed operations, property damage, bodily injury and personal & advertising injury with limits no less than $1,000,000 per occurrence. If a general aggregate limit applies, either the general aggregate limit shall apply separately to this project/location (ISO CG 25 03 or 25 04) or the general aggregate limit shall be twice the required occurrence limit.

2. Automobile Liability: Insurance Services Office Form Number CA 0001 covering, Code 1 (any auto), or if Consultant has no owned autos, Code 8 (hired) and 9 (non-owned), with limit no less than $1,000,000 per accident for bodily injury and property damage.

3. Workers' Compensation insurance as required by the State of California, with Statutory Limits, and Employer's Liability Insurance with limit of no less than $1,000,000 per accident for bodily injury or disease.

   (Not required if consultant provides written verification it has no employees)

4. Professional Liability (Errors and Omissions) Insurance appropriates to the Consultant's profession, with limit no less than $2,000,000 per occurrence or claim, $2,000,000 aggregate. The Retroactive Date must be shown and must be before the date of the contract or the beginning of contract work. Insurance must be maintained and evidence of insurance must be provided for at least five (5) years after completion of the contract of work. If coverage is canceled or non-renewed, and not replaced with another claims-made policy form with a Retroactive Date prior to the contract effective date, the Consultant must purchase "extended reporting" coverage for a minimum of five (5) years after completion of contract work. A copy of the claims reporting requirements must be submitted to the Entity for review.

If the Consultant maintains broader coverage and/or higher limits than the minimums shown above, the Entity requires and shall be entitled to the broader coverage and/or higher limits maintained by the Consultant. Any available insurance proceeds in excess of the specified minimum limits of insurance and coverage shall be available to the Entity.

Exhibit C (for PSA)                    Insurance Requirements                    r05-22-25

**Other Insurance Provisions**

The insurance policies are to contain, or be endorsed to contain, the following provisions:

The Entity, its officers, officials, employees, and volunteers are to be covered as additional insureds on the CGL policy with respect to liability arising out of work or operations performed by or on behalf of the Consultant including materials, parts, or equipment furnished in connection with such work or operations.

General liability coverage can be provided in the form of an endorsement to the Consultant's insurance at least as broad as one of the following ISO ongoing operations Forms: CG 20 10 or CG 20 26 or CG 20 33 (not allowed from subcontractors), or CG 20 38; **and** one of the following ISO completed operations Forms: CG 20 37, CG 20 39 (not allowed from subcontractors), or CG 20 40.

**Primary Coverage**

For any claims related to this contract, the Consultant's insurance coverage shall be primary insurance coverage at least as broad as ISO CG 20 01 04 13 as respects the Entity, its officers, officials, employees, and volunteers. Any insurance or self-insurance maintained by the Entity, its officers, officials, employees, or volunteers shall be excess of the Consultant's insurance and shall not contribute with it.

**Notice of Cancellation**

Consultant shall provide immediate written notice if (1) any of the required insurance policies is terminated; (2) the limits of any of the required polices are reduced; (3) or the deductible or self-insured retention is increased. In the event of any cancellation or reduction in coverage or limits of any insurance, Consultant shall forthwith obtain and submit proof of substitute insurance.

**Waiver of Subrogation**

Consultant hereby grants to Entity a waiver of any right to subrogation which any insurer of said Consultant may acquire against the Entity by virtue of the payment of any loss under such insurance. Consultant agrees to obtain any endorsement that may be necessary to affect this waiver of subrogation, but this provision applies regardless of whether or not the Entity has received a waiver of subrogation endorsement from the insurer. However, the Workers' Compensation policy shall be endorsed with a waiver of subrogation in favor of the Entity for all work performed by the Contractor, its employees, agents and subcontractors.

Exhibit C (for PSA)                    Insurance Requirements                    r05-22-25

## Self-Insured Retentions

Self-insured retentions must be declared to and approved by the Entity. The Entity may require the Consultant to provide proof of ability to pay losses and related investigations, claim administration, and defense expenses within the retention. The policy language shall provide, or be endorsed to provide, that the self-insured retention may be satisfied by either the named insured or Entity.

## Acceptability of Insurers

Insurance is to be placed with insurers authorized to conduct business in the state with a current A.M. Best's rating of no less than A:VII, unless otherwise acceptable to the Entity.

## Verification of Coverage

Consultant shall furnish the Entity with original Certificates of Insurance including all required amendatory endorsements (or copies of the applicable policy language effecting coverage required by this clause) and a copy of the Declarations and Endorsement Page of the CGL policy listing all policy endorsements to Entity before work begins. However, failure to obtain the required documents prior to the work beginning shall not waive the Consultant's obligation to provide them. The Entity reserves the right to require complete, certified copies of all required insurance policies, including endorsements required by these specifications, at any time.

## Subcontractors

Consultant shall require and verify that all subcontractors maintain insurance meeting all the requirements stated herein, and Contractor shall ensure that Entity is an additional insured on insurance required from subcontractors.

## Special Risks or Circumstances

Entity reserves the right to modify these requirements, including limits, based on the nature of the risk, prior experience, insurer, coverage, or other special circumstances.

Exhibit C (for PSA)                    Insurance Requirements                    r05-22-25



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
01/13/2026

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| LEHR INSURANCE AGENCY<br>2240 PROFESSIONAL DR<br>SANTA ROSA CA 95403 | PHONE (A/C, No, Ext): 707-546-3700    FAX (A/C, No):<br>E-MAIL ADDRESS: SARAHLEHR@ALLSTATE.COM<br>PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : Next Insurance US Company | 16285 |
| Gary WeinerDispute Resolution<br>1485 Timberhill Rd<br>Santa Rosa, CA 95401 | INSURER B : James River Insurance Company | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER:      REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE [X] OCCUR<br><br><br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY [ ] PRO-JECT [ ] LOC | Y | Y | NXTYHJCVHC-00-GL | 12/23/2025 | 12/23/2026 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>HIRED AUTOS<br>NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB [ ] OCCUR<br>EXCESS LIAB [ ] CLAIMS-MADE<br>DEDUCTIBLE<br>RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [ ]<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | PROFESSIONAL LIABILITY | | | P0000012711 | 01/13/2025 | 01/13/2026 | Each claim/Aggregate | $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Professional Liability is a Claims-Made policy with a $2,500 deductible.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Cotati<br>201 W Sierra Ave<br>Cotati, CA 94931 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>**Sarah Lehr**<br>Digitally signed by Sarah Lehr<br>DN: cn=Sarah Lehr, o=Allstate Insurance Agency, ou, email=sarahlehr@allstate.com, c=US<br>Date: 2026.01.13 16:38:44 -06'00' |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)      The ACORD name and logo are registered marks of ACORD

# EXHIBIT J

**Gary Weiner, Lawyer & Mediator**
Box 118
Sebastopol, CA 95473
Phone: ▮▮▮▮▮▮▮▮
Email: gw49@comcast.net

# INVOICE

PAY NOW

**Cotati Code Enforcement Hearing Officer 1**
Email: ▮▮▮▮▮▮▮▮

| Invoice Date | Invoice Number |
|---|---|
| 01/26/2026 | 21096 |
| **Terms** | **Service Through** |
| N/A | 12/31/2025 |

| Date | By | Services | Hours | Amount |
|---|---|---|---|---|
| 12/15/2025 | GW | Review emails received during absence, reply, review draft services agreement, correspondence re same, email to insurer, review scope of services with regard to decision | 0.75 | $ 393.75 |
| 12/19/2025 | GW | multiple email communications regarding insurance | 0.25 | $ 131.25 |
| 12/19/2025 | GW | Further emails with city rep regarding insurance | 0.20 | $ 105.00 |
| 12/22/2025 | GW | further correspondence regarding insurance coverage and contract review with both CITY of Cotati and insurance agent | 0.25 | $ 131.25 |
| 12/23/2025 | GW | GL insurance policy for Code Officer Cotati pursuant to request | | $ 417.00 |
| 12/23/2025 | GW | Printing briefs | | $ 17.95 |
| 12/23/2025 | GW | Finalize procurement of GL coverage | 0.20 | $ 105.00 |
| 12/24/2025 | GW | Initial review of pleadings on motion to dismiss | 0.60 | $ 315.00 |
| 12/28/2025 | GW | Review file to prepare to draft order on motion to dismiss | 0.40 | $ 210.00 |

| Vendor: | WEI01 |
|---|---|
| Payable ID: | 21096 |
| Amount: | $1,826.20 |
| PO # | |
| GL Account: | • 101-25-80185-000000 • |
| Invoice Descrip | CD | CODE ENFORCEMENT HEARING OFFICER • |
| Invoice Date: | 1/26/2026 |
| Post Date : | 1/26/2026 |
| Due Date: | 1/26/2026 |
| Payable Type : | I |

| | |
|---|---|
| **Total Hours** | 2.65 hrs |
| **Total Billable** | $ 1,391.25 |
| **Total Expenses** | $ 434.95 |
| **Total Invoice Amount** | $ 1,826.20 |
| **Previous Balance** | $ 25,357.50 |
| 1/15/2026  Payment - Check | ($25,392.25) |
| **Balance (Amount Due)** | $ 1,791.45 |

**EXHIBIT K**

**Subject:** Cotati v. Barich
**From:** "Carleton L. Briggs" <clbriggs@sonic.net>
**Date:** 2/13/2026, 2:59 PM
**To:** Gary Weiner <gw49@garyweiner.onmicrosoft.com>, Steve Ngo <Steve.Ngo@redwoodpubliclaw.com>, Robert Smith <rasmithlaw1@gmail.com>, "John D. Bakker" <jbakker@meyersnave.com>

Your Honor,

Please find attached the contract you recently entered into with the City of Cotati regarding this matter. I did not become aware of this contract until yesterday, although I believe you and the City of Cotati had a duty to disclose it at the time it was made.

Based on this newly acquired evidence, my client will be submitting a motion to recuse you as the AHO in this matter. I hope to be able to submit the motion next week and leave it to your discretion to designate a briefing schedule for an Opposition and Reply. The motion will be based primarily on *Haas v. County of San Bernardino*, 27 Cal.4th 1017 (2002), which stands for the proposition that "the personal selection of the hearing officer by the county's attorney—who also prosecuted the matter—was sufficient to cause a reasonable person to doubt the adjudicator's impartiality." The Court also held that the county's unilateral selection, retention, and payment of a temporary administrative hearing officers on an ad hoc basis violated due process. We believe the same reasoning applies whether Mr. Smith hired you in his capacity as an attorney or as a witness for the City. I also request that you provide me with a copy of the original contract you entered into with Mr. Smith that is referred to in the attached contract.

The motion will also be based on CCP section 170.1 and the California Code of Judicial Ethics.

Mr. Barich requests that you and the other recipients of this e-mail preserve all evidence, including but not limited to electronic communications, relating to the Barich matter. I would also like to remind you and the other recipients of the crime/fraud exception to the attorney-client privilege.

Respectfully,

Carleton L. Briggs, Attorney for Respondent

--
"The two most common elements in the world are hydrogen and stupidity."
    — Arthur Miller


Carleton L. Briggs
Law Offices of Carleton L. Briggs
740 Fourth Street, Suite 202
Santa Rosa, California 95404-4421
Telephone: (707) 523-2251, Cell: (707) 280-6323
Facsimile: (707) 523-2253
E-mail: clbriggs@sonic.net

PRIVILEGE and CONFIDENTIALITY NOTICE: This message and any attachments (including hyperlinks)

Attachments:

Memorandum of Services - Gary_Weiner - with Exhibit A and C -Plus COI - Signed    533 KB
(2).pdf