UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE EDWARD BARICH,
Plaintiff,

v.

CITY OF COTATI, et al.,
Defendants.

Case No. 26-cv-04944-KAW

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 9

On May 26, 2026, Plaintiff George Barich filed this case against Defendants City of Cotati ("Cotati") and Damien O'Bid, asserting constitutional violations related to a code enforcement proceeding. (Compl. ¶ 11.) Pending before the Court is Defendants' motion to dismiss on the basis of preclusion due to the failure to exhaust judicial remedies. (Defs.' Mot. to Dismiss, Dkt. No. 9-1.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the September 10, 2026 hearing, the Court GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

In 1994, Plaintiff purchased a single-family home in the city of Cotati; his home is in a subdivision zoned as rural residential. (Compl. ¶ 12.) Since 1994, Plaintiff has stored a van, a cargo trailer, a utility trailer, four vehicles, two jet skis, a motorhome, a small travel trailer, and various used vehicles that he would refurbish and sell for profit. (Compl. ¶ 14.)

For 25 years, Plaintiff was a frequent attender of City Council meetings. (Compl. ¶ 15.) In November 2008, Plaintiff was elected to the City Council before being recalled the following year. (Compl. ¶ 15.) In 2015 and 2021, Plaintiff brought lawsuits against Defendant Cotati, which were settled for $50,000 and $80,000 respectively. (Compl. ¶¶ 16, 17.) Plaintiff alleges that due to his

United States District Court
Northern District of California

public statements at City Council meetings and these two lawsuits, he is treated with disfavor and disdain by the current City Council and the city manager, Defendant O'Bid. (Compl. ¶ 15.)

Starting in 2018, Attorney Robert Smith has been contracted by Defendant Cotati as its primary Code Enforcement Official. (Compl. ¶ 18.) In this role, Attorney Smith was responsible for developing a code enforcement program, investigating and responding to complaints, monitoring compliance, and leading complaints through any necessary hearing processes. (Compl. ¶ 18.) In 2020, Plaintiff contacted Attorney Smith to request that Code Enforcement remove a "squatter" from his property. (Compl. ¶ 19.) During Attorney Smith's inspection, he identified several code violations, specifically two large cargo containers. (Compl. ¶ 20.) The containers were eventually removed, and Attorney Smith informed Plaintiff in June 2021 that his property was in compliance with the municipal code. (Compl. ¶ 21.) Plaintiff asserts that Attorney Smith recognized that except for the cargo containers, the uses on Plaintiff's property were "grandfathered in" as legal nonconforming uses going back to 1994. (Compl. ¶ 21.)

On June 5, 2023, less than five months after the settlement of the 2021 lawsuit, Plaintiff's neighbors requested that Code Enforcement investigate potential violations on Plaintiff's property. (Compl. ¶ 22.) On August 10, 2023, Plaintiff was sent a Notice of Violation and Order to Abate, which stated that there were numerous alleged violations on his property that had been deemed a public nuisance. (Compl. ¶ 23.) Plaintiff was given 30 days to remedy the violations and ordered to appear at a hearing on October 5, 2023. (Compl. ¶ 24.)

Plaintiff alleges that Laura Rosenthal was originally assigned to be the administrative hearing officer ("AHO"). (Compl. ¶ 25.) At the time, Attorney Smith had a list of local attorneys who would act as AHOs, and were paid $250 per hour. (Compl. ¶ 25.) Further, the hearings typically lasted no longer than one day, such that AHOs were typically paid less than $5,000 per hearing. (Compl. ¶ 25.) Plaintiff, however, alleges that Attorney Smith conspired with Defendant O'Bid to extort money from Plaintiff in retaliation for the exercise of his First Amendment rights. (Compl. ¶ 26.) Specifically, Plaintiff asserts that Attorney Smith canceled the October 5, 2023 hearing and instead hired Attorney Gary Weiner, who had no experience in these matters, to act as the AHO in Plaintiff's matter. (Compl. ¶ 26.) Attorney Smith entered into an oral contract with

AHO Weiner, in which Attorney Smith personally paid AHO Weiner $395 per hour (later increased to $525 per hour). (Compl. ¶ 26.) The agreement included no limit on AHO Weiner's jurisdiction, the scope and duration of his services, or the hours of work to be performed, nor did it preclude future employment of AHO Weiner as an AHO. (Compl. ¶ 26.) Plaintiff asserts that this agreement was "a bribe" and that the expectation was that AHO Weiner would rule in favor of Defendant Cotati. (Compl. ¶ 26.)

On November 13, 2023, AHO Weiner commenced a hearing, at which Plaintiff was represented by counsel. (Compl. ¶ 29.) Attorney Smith acted as the prosecution and primary witness for Defendant Cotati. (Compl. ¶ 29.) Plaintiff did not have the ability to subpoena witnesses or documents. (Compl. ¶ 29.) Plaintiff alleges that although the express purpose of the hearing was to determine whether Plaintiff had violated the municipal code, in actuality its purpose was to commit extortion. (Compl. ¶ 30.) The hearing lasted five hours and was devoted to the alleged violations, after which AHO Weiner ordered legal briefing. (Compl. ¶ 30.)

On January 25, 2024, AHO Weiner issued a case management order that provided for an interlocutory evidentiary hearing on Plaintiff's claim of selective prosecution. (Compl. ¶ 31.) Plaintiff alleges that this hearing was an opportunity to benefit financially by expanding the scope of the proceedings beyond the municipal code. (Compl. ¶ 32.) Specifically, § 1.30.080 of the municipal code stated that an AHO was only to consider evidence relevant to whether the violation occurred and/or whether a public nuisance exists, whether the recipient of the notice is the responsible party, and the administrative costs incurred by the city. (Compl. ¶ 32.)

On March 11, 2024, AHO Weiner held a hearing regarding the issue of selective prosecution, at which Attorney Smith and Plaintiff testified. (Compl. ¶ 34.) The hearing was adjourned before Plaintiff completed his testimony. (Compl. ¶ 34.) AHO Weiner then ordered a site inspection for March 26, 2024, which Plaintiff attended but was not permitted to record. (Compl. ¶ 35.)

On May 29 and June 19, 2024, two additional hearings on the motion to dismiss for selective prosecution were held. (Compl. ¶ 35.) After several delays due to illness, vacation, and recovery from an accident, AHO Weiner denied the motion to dismiss for selective prosecution on

February 3, 2025. (Compl. ¶¶ 36-37.)

On April 22, 2025, Plaintiff's counsel asked AHO Weiner to confirm how much he had received from Attorney Smith, arguing that such payments would "create[] the appearance of impropriety" and requesting that AHO Weiner recuse himself. (Compl. ¶ 38.) The next day, Attorney Smith responded that due to Plaintiff's "deep-seated belief in conspiracy theories and lack of trust in authority," Defendant Cotati had chosen an AHO with no prior connection to Defendant Cotati or Attorney Smith. (Compl. ¶ 39.) AHO Weiner also replied, denying the request for recusal. (Compl. ¶ 40.)

On June 2, 2025, Plaintiff formally requested that Attorney Smith be recused. (Compl. ¶ 41.) On June 4, 2025, Attorney Smith was replaced by Attorney Steven Ngo. (Compl. ¶ 41.)

On July 28, 2025, AHO Weiner granted Plaintiff's request to reopen the motion for selective prosecution. (Compl. ¶ 42.) On August 14 and 15, 2025, the motion was heard. (Compl. ¶ 44.) On August 18, 2025, AHO Weiner asked Attorney Ngo who he should address his invoices to, as he had previously been told to send his invoices to Attorney Smith. (Compl. ¶ 45.) On August 19, 2025, AHO Weiner received a payment of $11,156.25. (Compl. ¶ 46.)

From August 29, 2025 through October 30, 2025, additional hearings were held on the issue of selective enforcement. (Compl. ¶ 47.) During that time, AHO Weiner billed more than $30,000 for his services through November. (Compl. ¶ 47.)

On December 8, 2025, Defendants executed a written contract with AHO Weiner, requiring that AHO Weiner obtain liability insurance and comply with city ordinances. (Compl. ¶ 49.) On January 9, 2026, AHO Weiner denied the motion to dismiss. (Compl. ¶ 50.) On January 15, 2026, Defendant Cotati paid AHO Weiner $25,392.25. (Compl. ¶ 50.)

On February 13, 2026, Plaintiff's counsel complained to AHO Weiner about the failure to disclose the December 8, 2025 contract, and stated that he would be submitting a motion to recuse based on *Haas v. County of San Bernardino*. (Compl. ¶ 51.) On February 19, 2026, Plaintiff filed a formal motion to recuse AHO Weiner, which was denied on March 11, 2026. Around that time, AHO Weiner acknowledged his original oral contract with Attorney Smith. (Compl. ¶ 53.)

On April 7, 2026, AHO Weiner provided a tentative final order on the violations. (Compl.

¶ 54.) After the parties submitted objections, closing arguments were heard on April 16, 2026. (Compl. ¶ 54.) On April 23, 2026, AHO Weiner made a final order requiring Plaintiff to abate three of the violations and pay Defendant Cotati $240,167.98 for fines incurred through November 2023 and half of the administrative costs incurred, including fees paid to AHO Weiner. (Compl. ¶ 54.) On April 22 and 24, 2026, Defendant Cotati paid AHO Weiner $11,740.20 and $5,853.75. (Compl. ¶ 55.) On May 9, 2026, AHO Weiner amended the order to include additional administrative costs, resulting in a total due of $266,884.34. (Compl. ¶ 56.)

On May 26, 2026, Plaintiff filed this case, alleging claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment and violation of the Fourteenth Amendment's due process clause. The due process claims are based on Attorney Smith's prosecution of Plaintiff for the code violations, as well as Attorney Smith's selection of AHO Weiner and the subsequent payments to him, which Plaintiff asserts was a "bribe" by Attorney Smith to AHO Weiner. (*See* Compl. ¶¶ 64, 71-72, 81.)

On June 18, 2026, Defendants filed a motion to dismiss.[1] (Defs.' Mot. to Dismiss, Dkt. No. 9.) On July 1, 2026, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 13.) On July 9, 2026, Defendants filed a reply. (Defs.' Reply, Dkt. No. 14.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

[1] In a footnote, Defendants also request that the Court either consider the three administrative decisions as being incorporated by reference or, in the alternative, taking judicial notice of the three administrative decisions. (Defs.' Mot. to Dismiss at 10 n.3.) It is improper to request judicial notice in a footnote; rather, it is appropriate to file a separate request for judicial notice with the documents attached as exhibits. In any case, the Court did not rely on the administrative decisions, and thus does not need to address the issue.

there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Defendants seek dismissal of the entirety of the case based on Plaintiff's alleged failure to exhaust judicial remedies.[2] "[A]s a matter of federal common law, federal courts give preclusive

---

[2] The Court notes that Plaintiff argues that he is not required to exhaust administrative remedies prior to filing a § 1983 action. (Pl.'s Opp'n at 18.) Plaintiff appears to be conflating exhaustion of administrative remedies with exhaustion of judicial remedies, when they are in fact distinct issues. *See Franklin v. City of Kingsburg*, No. 1:18-CV-0824 AWI SKO, 2022 U.S. Dist. LEXIS 48157, at *8 (E.D. Cal. Mar. 17, 2022). Specifically, "[e]xhaustion of administrative remedies is a jurisdiction prerequisite to resort to the courts," whereas exhaustion of judicial remedies concerns the "binding effect [of] the administrative agency's decision." *Id.* (citing *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70-71 (2000)).

effect to the findings of state administrative tribunals in subsequent actions under § 1983." *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994). Thus, preclusive effect is given to "state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in *United States v. Utah Construction & Mining Co.*" *Id.* at 1032-33 (internal quotation omitted); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986).

"To decide whether federal common law entitles a state agency decision to preclusive effect, [the courts] proceed in two steps." *Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154 (9th Cir. 2024). First, the state administrative proceeding must have been "conducted with sufficient safeguards to be equated with a state court judgment" by satisfying the *Utah Construction* fairness requirements. *Id.* These requirements are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Id.* (internal quotation omitted). Second, if the "state agency proceeding satisfies the *Utah Construction* factors, [the courts] then turn to state law to determine if, under state law, the agency's decision would be given preclusive effect." *Id.* (internal quotation omitted). This step requires "defer[ence] to the considered judgments of the courts of the state that an unreviewed agency determination is equivalent to a state court judgment entitled to res judicata and collateral estoppel effect." *Id.* (internal quotation omitted).

**A. Step 1: *Utah Construction* Fairness Requirements**

**i. *Utah Construction* Factor 1: Judicial Capacity**

As an initial matter, the parties dispute what is required to demonstrate "judicial capacity," namely whether the Court should consider federal or state law. Specifically, Plaintiff points to *Pacific Lumber Co. v. State Water Resources Control Board*, which identified "[i]ndicia of proceedings undertaken in a judicial capacity" for purposes of determining whether an administrative decision would have collateral estoppel effect. (Pl.'s Opp'n at 19 (citing 37 Cal. 4th 921, 944 (2006)).) Defendants, in turn, argue that the Court should only consider federal

common law. (Defs.' Reply at 9.)

Based on the Court's review of the cases, courts in this Circuit have typically considered California law in determining whether *Utah Construction* is satisfied. This approach appears to be a recognition that in *People v. Sims*, "[t]he California Supreme Court . . . established a two-part test to evaluate the preclusive effect to accord administrative agency determinations." *Eilrich v. Remas*, 839 F.2d 630, 633 (9th Cir. 1988) (citing 32 Cal. 3d 468, 479 (1982)). Specifically, to give an agency decision preclusive effect, California likewise requires that the *Utah Construction* fairness requirements are satisfied before turning to "traditional collateral estoppel criteria[.]" *Id.* Thus, many courts -- including the Ninth Circuit cases relied upon by Defendants -- have considered California's requirements in determining whether an agency proceeding were undertaken in a judicial capacity. *See Eilrich*, 839 F.2d at 634 (considering California statutory law and *Sims* in determining whether the hearing officer acted in a judicial capacity); *Plaine v. McCabe*, 797 F.2d 713, 720 (9th Cir. 1986) (same). In short, satisfying federal common law requires satisfying California law as well.

"Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." *Pac. Lumber Co.*, 37 Cal. 4th at 944. That said, "California precedent makes clear that an administrative hearing, to qualify as sufficiently 'judicial' for collateral estoppel purposes, need not be identical to a judicial trial, so long as basic due process considerations are satisfied." *Basurto v. Imperial Irrigation Dist.*, 211 Cal. App. 4th 866, 884 (2012). Thus, the ultimate "inquiry that must be made is whether the traditional requirements and policy reasons for applying the collateral estoppel doctrine have been satisfied by the particular circumstances of this case." *Sims*, 32 Cal. 3d at 483. Accordingly, some California courts have found that "due process is satisfied as long as the property owner receives adequate notice of the nature of the alleged nuisance and a meaningful opportunity to respond to the charges against him," such that "[i]t is not necessary that he receive the full panoply of procedural protections accorded in a judicial trial,

such as the ability to cross-examine witnesses under oath, to subpoena witnesses, or to engage in discovery." *Mohilef v. Janovici*, 51 Cal. App. 4th 267, 276 (1996).

Here, the proceedings at issue appear to include many of the indicia identified in *Pacific Lumber*. Plaintiff was given notice of the alleged violations on August 10, 2023. (Compl. ¶ 24.) Plaintiff was then represented by counsel throughout the proceedings that took place between November 13, 2023 and May 9, 2026 (Compl. ¶¶ 30, 56), was able to identify witnesses to be called (Compl. ¶ 31), was able to attend a site inspection with the AHO (Compl. ¶ 35), was able to submit oral and written arguments including motions to dismiss the case for selective prosecution and recuse the AHO and objections to the tentative final order (Compl. ¶¶ 30, 41, 43, 52, 54), and received written statements of decisions (Compl. ¶¶ 43, 54, 56). Courts have found similar proceedings to satisfy the *Utah Construction* criteria under California law. *See Plaine*, 797 F.2d at 720 (finding that the agency acted in a judicial capacity where the fairness hearing "was an adversary proceeding in which opposing parties were present and represented by counsel and were allowed to call, examine, cross-examine, and subpoena witnesses," testimony was submitted under oath, and the parties received a written decision setting forth the reasons for the decision); *Eilrich*, 839 F.2d at 634 (finding that the agency acted in a judicial capacity where both parties were represented by counsel at the hearing, sworn witnesses testified, subpoenas were issued, both parties presented oral and written argument, and the hearing officer applied established legal standards to the facts of the case).

In opposition, Plaintiff argues that the proceedings lacked sufficient indicia of judicial capacity because he was not given the ability to subpoena witnesses or documents, was not permitted to record the March 26, 2024 site inspection, and because he was not given an impartial decisionmaker. (Pl.'s Opp'n at 20, 22.) The Court addresses each in turn.

a. Subpoena Witnesses

In his complaint, Plaintiff alleges that he was not able to subpoena witnesses or documents at the November 13, 2023 hearing. (Compl. ¶ 29.) In so arguing, Plaintiff appears to contend that all of the characteristics identified in *Pacific Lumber* are required for a proceeding to be sufficiently judicial in character. (Pl.'s Opp'n at 19.) *Pacific Lumber*, however, only identified

"[*i]ndicia* of proceedings undertaken in a judicial capacity," not requirements. 37 Cal. 4th at 944 (emphasis added); *see also Wilson v. Oakland Unified Sch. Dist.*, No. 3:21-cv-09157-WHO, 2024 U.S. Dist. LEXIS 43767, at *18 (N.D. Cal. Mar. 12, 2024) ("California law does not apparently *require* each of [the *Pacific Lumber* indicia] for a proceeding to be sufficiently judicial in character"). Thus, courts have found that a proceeding had sufficient indicia of judicial capacity even when it was "not clear from the [complaint] whether the testimony was given under oath, whether the parties could subpoena witnesses, or whether they could make written arguments[.]" *Wilson*, 2024 U.S. Dist. LEXIS 43767, at *18; *see also Mohilef*, 51 Cal. App. 4th at 276.

Moreover, as discussed above, the Court must consider the particular circumstances of this case. *See Sims*, 32 Cal. 3d at 483. While Plaintiff alleges that he was unable to subpoena witnesses or documents at the November 13, 2023 hearing, the hearing procedure permitted Plaintiff to present witnesses and evidence. (*See* Compl., Exh. I (Cotati Municipal Code § 1.30.080(D).) Plaintiff was also able to identify witnesses to be called regarding his retaliation claim. (Compl. ¶ 31.) In short, Plaintiff has not established that his ability to formally subpoena witnesses or evidence deprived him of "a meaningful opportunity to respond to the charges against him." *Mohilef*, 51 Cal. App. 4th at 276.

b. March 26, 2024 Site Inspection

Plaintiff asserts that there was no "record of the proceeding" because he was not allowed to record or videotape the March 26, 2024 site inspection. (Pl.'s Opp'n at 22.) Plaintiff cites no authority that videorecording of a site inspection is required for an administrative proceeding to have been conducted in a judicial capacity. Rather, Plaintiff relies on *Pacific Lumber* and its finding that one of the indicia of judicial capacity is "the taking of a recording of the proceeding." (*Id.*) Again, however, *Pacific Lumber* did not require each of the indicia to be present. *See Wilson*, 2024 U.S. Dist. LEXIS 43767, at *18. In any case, *Pacific Lumber* did not require that a *party* be permitted to record proceedings; the issue is whether there is a record of the proceedings. *See* 37 Cal. 4th at 944.

Alternatively, Plaintiff argues that his inability to record violates his First Amendment rights and his ability to preserve evidence that would demonstrate the existence of felonies such as

bribery and obstruction of justice. (Pl.'s Opp'n at 22-23.) This is a separate issue from whether the administrative proceedings at issue were conducted in a judicial capacity. While Plaintiff argues he is unaware of any decision where collateral estoppel was applied where the administrative hearing officer and a prosecutor participated in felonies, he also cites no authority that suggests a plaintiff's belief in criminal behavior gives a plaintiff the right to personally videorecord a site inspection.

c. Impartial Decisionmaker

Finally, Plaintiff argues that he was deprived of an impartial decisionmaker. (Pl.'s Opp'n at 20.) Both the Supreme Court and California Supreme Court have found that in "articulating the procedural requirements 'demanded by rudimentary due process' in [administrative hearings] . . . 'of course, an impartial decision maker is essential.'" *Haas v. Cty. of San Bernardino*, 27 Cal. 4th 1017, 1025 (2002) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267, 271 (1970)).

Plaintiff asserts that AHO Weiner was not an impartial decisionmaker, relying on *Haas*. There, the plaintiff was appealing the revocation of his business license. 27 Cal. 4th at 1021. The plaintiff objected to the hearing officer, Attorney Abby Hyman, arguing that she had an impermissible financial interest in the case because of the way the County had selected and paid her. *Id.* Specifically, Attorney Hyman had not previously served as a hearing officer, but had instead been hired to hear only the plaintiff's case because the County counsel had wanted to avoid using the same hearing officer who had already recommended the revocation of the plaintiff's license. *Id.* The County counsel, however, admitted that he could foresee employing Attorney Hyman on future cases, and that he assumed that Attorney Hyman knew it was a possibility that she could be employed for future cases. *Id.* at 1022.

On appeal, the issue was "whether a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill." *Haas*, 27 Cal. 4th at 1024. The California Supreme Court found that the answer was yes because "while the adjudicator's pay is not formally dependent on the outcome of the litigation, his or her future income as an adjudicator is entirely dependent on the

goodwill of a prosecuting agency that is free to select its adjudicators and that must, therefore, be presumed to favor its own rational self-interest by preferring those who tend to issue favorable rulings." *Id.* at 1029. In short, the risk of bias arose from the County "be[ing] the repeat customer upon whose goodwill, alone, the hearing officer's prospect for future employment in that capacity depended." *Id.* at 1030.

Here, beyond the allegation that the agreement between Attorney Smith and AHO Weiner "did not preclude future employment," Plaintiff does not allege that AHO Weiner knew or otherwise assumed that he could or would be offered future employment as an AHO in any case other than Plaintiff's. (*See* Compl. ¶ 26.) Rather, Plaintiff argues that because AHO Weiner was selected and paid by Attorney Smith, the initial prosecutor in this case, AHO Weiner had a direct financial stake throughout the proceedings. (Pl.'s Opp'n at 21.) In other words, Plaintiff appears to be arguing that AHO Weiner's financial interest came from the proceedings against *Plaintiff* itself, not from the prospect of future employment in other cases with Defendant Cotati or Attorney Smith. *Haas*, however, recognized that "due process does not forbid the government to pay an adjudicator when it must provide someone with a hearing before taking away a protected interest," recognizing that "the government must ordinarily pay the adjudicator in such cases to avoid burdening the affected person's right to a hearing." 27 Cal. 4th at 1031. Likewise, "no generally applicable principle of constitutional law permits the affected person in such a case to select the adjudicator." *Id.* Rather, the issue in *Haas* was that the hearing officer had an incentive to rule favorably for the County because she knew she could be employed by the County for *other* future cases. *Id.* at 1029. No such allegations are made in this case. Thus, *Haas* is not applicable in this case.

At the hearing, however, Plaintiff stated that he would be able to allege that the agreement between Attorney Smith and AHO Weiner provided for future employment, and that AHO Weiner in fact obtained further employment through Attorney Smith after he agreed to be the hearing officer. If Plaintiff can allege such facts, *Haas* would appear to be squarely applicable in this case, such that Defendants would not be able to establish the *Utah Construction* factors. Indeed, while Defendants were not willing to concede that an impartial decisionmaker is required to satisfy *Utah*

*Construction* at the hearing, an impartial decision maker has long been found to be an "essential" part of due process. *See Goldberg*, 397 U.S. at 271. The Court cannot imagine a case that would find that an administrative proceeding has sufficient indicia of judicial capacity where a temporary administrative hearing officer had such a risk of bias that the California Supreme Court would have found that disqualification was necessary.

Alternatively, Plaintiff makes the conclusory assertion that there is no impartiality "where the attorney advocating for a municipality serves as the hearing officer's advisor[.]" (Pl.'s Opp'n at 20.) Plaintiff, however, fails to provide any analysis on this point, including who allegedly acted as AHO Weiner's advisor. Rather, the complaint alleges that Attorney Smith acted as a prosecutor and witness, not as an advisor to AHO Weiner. (Compl. ¶ 26.)

Taken together, the Court finds that the first *Utah Construction* fairness factor is satisfied, and the complaint fails to allege sufficient facts to the contrary. The Court, however, will allow Plaintiff to amend the complaint to add facts regarding any promise or provision of future employment to AHO Weiner by Attorney Smith.

**ii. *Utah Construction* Factor 2: Agency Resolution of Issues Properly Before It**

The next issue is whether AHO Weiner resolved issues properly before him. "[A]n issue is properly before an administrative tribunal if that body has jurisdiction to decide it." *Jamgotchian*, 93 F.4th at 1158. If an agency lacks jurisdiction, its decision necessarily lacks preclusive effect. *Id.*

Here, there is no real dispute that AHO Weiner had jurisdiction to decide the issue of "whether the violation occurred and/or whether a public nuisance exists," as provided by Defendant Cotati's Municipal Code. (*See* Defs.' Mot. to Dismiss at 15; Pl.'s Opp'n at 23.) Plaintiff, however, argues that AHO Weiner lacked jurisdiction to decide the selective enforcement issue. (Pl.'s Opp'n at 23.) Plaintiff points to the same Municipal Code section, which provides:

> The hearing officer shall only consider evidence that is relevant to whether the violation occurred and/or whether a public nuisance exists, whether the recipient of the notice and order is the responsible party, and the administrative costs incurred by the city.

Cotati Mun. Code § 1.30.080(C). Thus, Plaintiff appears to contend that the selective enforcement issue is not relevant to what the hearing officer was permitted to consider. (Pl.'s Opp'n at 24.)

Plaintiff, however, fails to explain why the selective enforcement issue is not relevant to the issue of whether the violation occurred and/or whether a public nuisance exists. Indeed, it appears Plaintiff was the one who raised the selective prosecution issue and made motions to dismiss on this ground, as Plaintiff had claimed "that the enforcement of city codes is retaliation for his past claims against the City[.]" (Compl. ¶ 31; *see also* Compl. ¶ 35.) Thus, the selective prosecution appears to be directly tied to the issue of whether a violation occurred and/or whether a public nuisance exists. Otherwise, it is unclear who would have had the jurisdiction to decide Plaintiff's motion to dismiss for selective prosecution. Indeed, at the hearing, Plaintiff opined that no one would have the ability to decide such an issue, which would seem to leave any proceedings in which a party asserted selective prosecution or bias in permanent limbo.

The Court thus finds that the second *Utah Construction* fairness factor is satisfied.

**iii. *Utah Construction* Factor 3: Adequate Opportunity to Litigate**

Finally, the third *Utah Construction* factor concerns whether Plaintiff had an adequate opportunity to litigate the issues. Plaintiff does not make any meaningful argument that he lacked an adequate opportunity to litigate; rather, based on the complaint, it appears Plaintiff was able to raise his many arguments regarding selective prosecution and bias, as well as participate in the proceedings through both oral and written submissions. (*See* Compl. ¶¶ 29-31, 34-35, 37, 41, 47-48, 51-52, 54.)

The Court thus finds that the third *Utah Construction* fairness factor is satisfied.

**B. Step 2: Traditional Collateral Estoppel Criteria**

The second step of determining whether judicial exhaustion applies "entails traditional collateral estoppel criteria, barring relitigation of an issue if: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding." *Eilrich*, 839 F.2d at 633. In *Eilrich*, the Ninth Circuit found that these criteria were "met because Eilrich was a

United States District Court
Northern District of California

party to the prior proceeding and the officer made a determination on the merits of the first amendment claim that became final when Eilrich failed to seek judicial review in the California courts." *Id.* at 634.

Here, Plaintiff was a party to the prior proceeding and AHO Weiner made determinations on the merits of the selective prosecution and code violation issues. (Compl. ¶¶ 37, 43, 48, 50.) Further, there is no dispute that after AHO Weiner made his determination, Plaintiff was permitted to obtain judicial review by filing an appeal in the Sonoma County Superior Court in accordance with California Government Code § 53069.4. (Defs.' Mot. to Dismiss at 9.) Plaintiff did not, and § 53069.4 provides that "[i]f no notice of appeal of the local agency's final administrative order or decision is filed within the period set forth in this section, the order or decision shall be deemed confirmed." Cal. Gov. Code § 53069.4(c).

Plaintiff briefly argues that AHO Weiner did not rule on the issue of bribery, with no analysis. (Pl.'s Opp'n at 22.) While AHO Weiner did not specifically address the issue of "bribery," AHO Weiner did address the issue of the payments by Attorney Smith to AHO Weiner when Plaintiff requested that AHO Weiner recuse himself on this basis, including by e-mail and in a formal motion to recuse. (Compl. ¶¶ 38, 40, 51, 52.) Although now recharacterized as "bribery," the underlying facts of both the bribery and recusal claim are the same -- the hiring of AHO Weiner by Attorney Smith, the subsequent payments for AHO Weiner's work, and the December 8, 2025 contract between AHO Weiner and Defendant Cotati. (*See* Compl. ¶¶ 38, 51.) Likewise, the legal theory is the same, namely that the payments were in violation of *Haas*. (*See* Compl. ¶51.) By way of comparison, in *Eilrich*, the plaintiff attempted to avoid collateral estoppel by slightly changing which statements he asserted were the basis of his First Amendment claim in court in comparison to what had been resolved in the agency hearing. 839 F.2d at 634. The Ninth Circuit rejected the attempt, explaining that collateral estoppel cannot be avoided "by merely changing the statements to be considered, although they arise from the same factual circumstances and the legal standard requires an overall examination of those circumstances." *Id.* at 635. To "[c]ondone such strategic evasion would thwart the policies underlying collateral estoppel: (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent

judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *Id.* Such is the case here. *See also Miller*, 39 F.3d at 1034 (finding that collateral estoppel applied where the plaintiff recharacterized her wrongful termination claim at the agency level to a constitutional claim before the district court).

Accordingly, the Court finds that California's traditional collateral estoppel criteria have been satisfied, such that dismissal is warranted. Because Plaintiff has identified facts that could be added, however, Plaintiff's case is dismissed without prejudice for failure to exhaust his judicial remedies.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss without prejudice for failure to exhaust judicial remedies. Plaintiff may file an amended complaint within **14 days** of the date of this order, which shall be limited to adding facts regarding the alleged promise or provision of future employment to AHO Weiner by Attorney Smith. Plaintiff shall also provide a redlined version of the amended complaint.

Again, the Court observes that if Plaintiff is able to successfully add facts that would support a finding that AHO Weiner was not an impartial decisionmaker under *Haas*, it would appear any motion to dismiss would be futile.

IT IS SO ORDERED.

Dated: September 22, 2026



KANDIS A. WESTMORE
United States Magistrate Judge